THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA

WILLIAM R. RHODES, RUSSELL H.
MILLER, and VALORI A. MACE,

    Plaintiffs,

vs.                                    CIVIL ACTION NO. 6:06-0530
                                    (Judge Joseph R. Goodwin)

E.I. DUPONT DE NEMOURS AND COMPANY,

    Defendant.

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPLEX CASE DESIGNATION, SEQUENCED DISCOVERY AND ISSUANCE OF A CASE MANAGEMENT ORDER

Plaintiffs hereby object to Defendant E.I. duPont de Nemours and Company's ("DuPont's") request that this case be designated as a "complex case," and object to DuPont's request for issuance of a case management order with severely restricted discovery "sequenced" in the manner suggested by DuPont. Although Plaintiffs fully agree with the need for entry of an appropriate case management order, Plaintiffs believe that their proposal for management of this case as set forth in the parties' joint "Report of Parties Planning Meeting" is more appropriate.

Although Plaintiffs' Complaint may appear on its face to present a complicated case warranting "complex" case designation, the unique relationship of this case with a prior case already litigated and settled with DuPont in West Virginia State Court, styled *Leach, et al. v. E.I. du Pont de Nemours and Company*, Case No. 01-C-608 (Wood County Circuit Court), makes any such "complex" designation of this case unnecessary. As described in Plaintiffs' Memorandum In Opposition to DuPont's Motion For Exception To Mandatory Mediation, being filed

contemporaneously herewith, even DuPont agrees that the years of extensive, protracted discovery in the virtually identical *Leach* case proceedings should enable the parties to move forward with this case in a procedural setting significantly further along the litigation/discovery path than would otherwise be the case. As explained by DuPont in its own motion papers, DuPont and counsel for Plaintiffs have already spent *years* engaged in extensive, "broad-reaching discovery related to the *core issues in this case*" through efforts undertaken in connection with the prior *Leach* litigation. DuPont's Motion, at 4 (emphasis added). As explained by DuPont, itself, over 1.5 million pages of documents already have been produced, over 20 depositions already have been taken, and multiple sets of written discovery, including interrogatories, requests for production of documents, and requests for admissions, have been exchanged and answered relating to the same underlying "core issues." *See id.*

The massive amount of work already undertaken on these common "core issues" in the *Leach* case, including discovery exchanged, motions argued, and evidence presented to the Court (including expert testimony), was sufficient to enable the *Leach* Court case to certify a class of approximately 70,000 people living in communities nearby Parkersburg to proceed with virtually identical claims against DuPont involving contamination of those communities' drinking water supplies with PFOA/C-8. This same prior work also was sufficient to generate information, including findings of fact and rulings of law on common underlying "core issues," that DuPont found sufficient to agree to a precedent-setting settlement of such claims for the entire class with a potential value in excess of $300 million. *See* Plaintiffs' Suggestion for Mediation, at Exhibit 1 (copy of Leach settlement agreement).

Even DuPont argues that, because of the extensive work that already has been done with respect to virtually identical claims and identical legal and factual issues, there is no need for any extensive additional discovery in this case beyond DuPont simply "updating" the discovery exchanged in the prior *Leach* litigation. *See* DuPont's Motion, at 5-6. Thus, rather than presenting an extraordinarily "complex case" requiring special treatment by the Court, the unique procedural status of this case in relation to the already-settled *Leach* litigation involving what DuPont describes as common "cores issues" should make this case much easier to manage.

After explaining how similar this case is to the *Leach* litigation and suggesting that DuPont need only "update" discovery exchanged in that case, DuPont, nevertheless, argues that this Court must adopt a staged case management order far different from what was followed in the *Leach* case. In short, DuPont argues that a case management order should be adopted that severely limits any additional discovery to DuPont and focuses the parties' efforts, instead, on proving the substantive merits of Plaintiffs' claims, including requiring Plaintiffs to first prove that any of Plaintiffs' personal injuries or individualized damages have actually been caused by DuPont's chemicals, before any class certification issues are addressed. *See* DuPont's Motion, at 4-5 (DuPont asks the Court to enter an order requiring Plaintiffs to first prove the "evidence plaintiffs contend ... demonstrates causation" before class certification is even decided). DuPont fails to point out, however, that it tried several times to force the *Leach* Court to adopt such a case management strategy requiring a "mini-trial" on the merits before class certification, and that the *Leach* Court flatly rejected such attempts as improper under West Virginia law, which prohibits such "mini-trials' on the merits of plaintiffs' claims prior to class certification. *See* Exhibit A (copies of DuPont's

3

motions seeking staged merits discovery and the Leach Court's rulings rejecting such requests under applicable West Virginia law).

DuPont also has not explained for the Court that the scope of the discovery it proposes to produce before class certification in this case is *significantly* narrower than what DuPont already produced in the *Leach* case and could simply update in this case. As indicated in the Orders from the *Leach* court attached hereto at Exhibit A, discovery to DuPont was not limited to only "class certification" issues (versus "merits"), was not limited to only the five discreet subject matters now suggested by DuPont, and certainly was not limited to only final, "completed" study documents, as now suggested by DuPont[1]. DuPont's discovery obligations were limited only by the bounds of Rule 26 (those things deemed relevant to the claims and defenses at issue). As such, DuPont was required to produce not only whatever final "completed" studies it had but also any drafts of proposed studies that were later rejected, never approved by management or counsel, or later changed, along with internal emails, memoranda, and other documents relating to DuPont's decision-making process relating to such issues. Thus, if DuPont believes that the parties should rely upon the discovery already exchanged in the *Leach* case to avoid duplicative discovery in this case, there is no reason the "updated" discovery that DuPont is willing to provide should be limited to narrower, more restrictive subject matters than what already has been produced. DuPont offers no explanation whatsoever for why its production obligations in this case should be so severely restricted to only "completed" study documents on only five specific topics.

---

[1] Note that DuPont limits the scope of all categories of documents it is willing to produce now to only documents falling within 5 specified categories that are "completed." DuPont's Motion, at 5-6. This carefully-chosen limitation would appear to exclude all drafts, revisions, or other documents relating to anything other than the final, reported study documents. In other words, all that would be produced is that which DuPont chooses to disclose in a final report, assuming first that DuPont even decides to release a final report..

For the reasons stated above, Plaintiffs object to DuPont's request to classify this case as "complex" for purposes of case management and object to DuPont's request for entry of a case management order bifurcating discovery in a way that precludes Plaintiffs from engaging in the same scope of discovery that was permitted in the *Leach* case. The case management strategy adopted by the *Leach* court, which bifurcated the case into a "liability" phase and a "damages" phase, with unrestricted discovery on liability issues and all issues of individualized damages stayed and severed for later litigation, proved remarkably successful. That case management strategy led to a precedent-setting settlement of the claims of tens of thousands of persons living in communities close to Parkersburg involving what DuPont describes as the same "core issues" presented in this case on behalf of Parkersburg City water customers who would have been included in the original *Leach* settlement, if their drinking water contamination had been known at that time. Plaintiffs, therefore, request that the Court enter an order adopting the case management procedures proposed by Plaintiffs in the parties' joint "Report of Parties' Planning Meeting."

Respectfully submitted,

/s/ **Harry G. Deitzler**
Harry G. Deitzler (WVSB # 981)
R. Edison Hill (WVSB # 1734)
Hill, Peterson, Carper, Bee &
Deitzler, PLLC
NorthGate Business Park
500 Tracy Way
Charleston, WV 25311-1261
(304) 345-5667

/s/ **Larry A. Winter**
Larry A. Winter (WVSB #4094)
Winter Johnson & Hill PLLC
United Center
500 Virginia Street, East
P.O. Box 2187
Charleston, WV 25328
(304) 345-7800

Robert A. Bilott (OSB#046854)
Taft, Stettinius & Hollister LLP
425 Walnut Street
Suite 1800
Cincinnati, OH 45202
Telephone: (513) 381-3828

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

I, Larry A. Winter, do hereby certify that on October 27, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Niall A. Paul, Esq.
> Stephanie L. Ojeda, Esq.
> Spilman Thomas & Battle
> PO Box 273
> Charleston, WV 25321

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

> Anthony F. Cavanaugh, Esq.
> Libretta P. Stennes, Esq.
> STEPTOE & JOHNSON
> 1330 Connecticut Avenue, NW
> Washington, DC 20036
>
> Laurence F. Janssen, Esq.
> STEPTOE & JOHNSON
> Suite 700
> 633 West Fifth Street
> Los Angeles, CA 90071

> **s/Larry A. Winter**
> Larry A. Winter (State Bar No. 4094)
> Attorney for Plaintiffs
> Winter Johnson & Hill PLLC
> P.O. Box 2187
> Charleston, WV 25238
> (304) 345-7800
> (304) 345-7830 (fax)
> lwinter@wjh-law.com