THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
PARKERSBURG DIVISION

WILLIAM R. RHODES, et al.,

      Plaintiffs,

vs.                                           CIVIL ACTION NO. 6:06-0530
                                             (Judge Joseph R. Goodwin)

E.I. DUPONT DE NEMOURS AND COMPANY,

      Defendant.

## SECOND AMENDED CLASS ACTION COMPLAINT

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, plaintiffs, individually and on behalf of a class of other people similarly situated, state as follows for this Second Amended Class Action Complaint against Defendant E. I. du Pont de Nemours and Company ("DuPont"):

## NATURE OF ACTION

1.      This is a civil action for declaratory relief, injunctive relief, equitable relief, compensatory and punitive damages, including medical monitoring, and costs incurred and to be incurred by plaintiffs and the other class members for bodily injury, emotional distress and property damage arising from the intentional, knowing, reckless and negligent acts and omissions of DuPont in connection with contamination of human drinking water supplies used by plaintiffs and other class members. The contamination occurred in connection with DuPont's manufacturing, production, processing, recycling, use, release, discharge and/or disposal of perfluorinated materials including ammonium perfluorooctanoate (a/k/a C-8,  PFOA, DFS-1, DFS-2, and FC-143) (hereinafter referred to as "C-8," "PFOA," and/or the "Materials"),  at and/or otherwise attributable to DuPont's Washington Works plant (the "Washington Works Plant") in

Wood County, West Virginia.  This action is brought for individual claims and pursuant to Rule 23 of the Federal Rules of Civil Procedure, as a class action on behalf of the named plaintiffs and on behalf of all individuals who have consumed, for at least one year, drinking water supplied by the Parkersburg City Water Department (a/k/a Parkersburg Utility Board, Parkersburg Municipal Water Department, and City of Parkersburg Water Department), in Wood County, West Virginia, a source of human drinking water contaminated with more than 0.05 ppb of C-8 attributable to releases from the Washington Works Plant (hereafter, such water source is sometimes referred to as a "Contaminated Source").

## JURISDICTION AND VENUE

2.      This Court has venue and jurisdiction over this action.

3.      This action is brought for individual claims and pursuant to Rule 23 of the Federal Rules of Civil Procedure, as a class action on behalf of the named plaintiffs and on behalf of all individuals who, as a result of the acts and omissions of the Defendant, have consumed, for at least one year, drinking water contaminated by C-8, supplied by the Parkersburg City Water Department.

## GENERAL ALLEGATIONS

4.      DuPont is a Delaware corporation authorized to conduct business in the State of West Virginia and has a principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

5.      DuPont owns and operates a manufacturing facility in Wood County, West Virginia, known as the "Washington Works Plant."

6.      In connection with its manufacturing operations at its Washington Works Plant DuPont has used hazardous, toxic and/or carcinogenic wastes, substances, pollutants and/or contaminants, including "C-8."

7.     During the course of its operations at its Washington Works Plant, DuPont has negligently, recklessly, knowingly, carelessly, wrongfully and/or intentionally allowed, caused, and/or otherwise permitted and is continuing to so allow, cause, and otherwise permit releases of Materials, from the Washington Works Plant into those waters that are and have been used for human drinking water purposes (the "Releases").

8.     Plaintiffs are those persons who have been significantly exposed to the Materials through ingestion of or other significant exposure to water supplied by the Parkersburg City Water Department which has been contaminated by the Releases.  The named plaintiffs are as follows:

   a.     William R. Rhodes, a resident of Parkersburg, Wood County, West Virginia, and has consumed for at least one year, water supplied by Parkersburg City Water Department.

   b.     Russell H. Miller, a resident of Parkersburg, Wood County, West Virginia, and has consumed for at least one year, water supplied by Parkersburg City Water Department.

   c.     Valori A. Mace, a resident of Parkersburg, Wood County, West Virginia, and has consumed for at least one year, water supplied by Parkersburg City Water Department.

(hereinafter collectively referred to as ("Plaintiffs").

9.     In 1991, DuPont established a "community exposure guideline" ("CEG") of 1 part per billion (1 ppb) for C-8 in public drinking water supplies for humans.

10.    C-8 poses a risk to human health at a concentration of less than 1 ppb in water.

11.    By at least 1984, DuPont had detected C-8 in public water supplies at levels exceeding 1 ppb.

12.    By at least 2001, DuPont had learned that C-8 had been detected in private water wells hydraulically down-gradient from one or more of the locations where DuPont had dumped C-8 into the ground, including DuPont's Dry Run Landfill in Wood County, West Virginia, and

DuPont's Letart Landfill in Mason County, West Virginia; and DuPont has known that C-8 from the Washington Works Plant is emitted into the air and falls to the earth from air plumes, so as to contaminate water utilized for household purposes including drinking water, in various areas including, but not limited to, water sources utilized by the City of Parkersburg Water Department.

13.     At no time since C-8 was first detected in the drinking water provided by the Parkersburg City Water Department, has DuPont disclosed to the public that C-8 was present in such water at any level presenting any risk of harm.

14.     DuPont has known for several years that the discharge of C-8 into the environment from its Washington Works Plant is contributing to the levels of C-8 present in human water supplies, including the Parkersburg City Water Department.

15.     DuPont has known for several years that the level of C-8 discharged from its Washington Works Plant could be reduced substantially by use of a carbon absorption treatment system at the Washington Works Plant.

16.     It was not until the Spring of 2001, after the West Virginia Division for Environmental Protection ("WVDEP") first asked DuPont to begin monitoring and reporting to WVDEP the levels of C-8 discharged from DuPont's Washington Works Plant into the Ohio River, that DuPont installed a carbon absorption treatment system at its Washington Works Plant to attempt to begin reducing the levels of C-8 discharged directly from the Washington Works Plant into the Ohio River.

17.     Since the late 1970s, DuPont has arranged and paid for medical monitoring, including periodic blood sampling, of those DuPont employees working at the Washington Works Plant who have been exposed to C-8 during the course of their employment at the Washington Works Plant.

4

18.     At no time since C-8 was first detected in human drinking water has DuPont provided or paid for medical monitoring for customers of the Parkersburg City Water Department.

19.     Perflourooctanoic acid ("PFOA") is a perflourinated detergent/surfactant that is manufactured, processed, and/or distributed by DuPont.

20.     PFOA is a liver toxin in animals, is biopersistent in humans and animals and bioaccumulative in humans.

21.     Studies have indicated that PFOA causes developmental toxicity and other adverse effects in animals.

22.     DuPont has conducted both animal and human studies and tests on PFOA.

23.     In 1981, 3M, a manufacturer of PFOA, advised DuPont that PFOA may cause birth defects in laboratory animals.

24.     Also in 1981, DuPont possessed a document describing the results of a blood sampling study DuPont conducted on at least seven (7) of its pregnant or recently pregnant employees employed at the Washington Works Plant (the "Female Employees").  This document identified the levels of PFOA in the blood of DuPont's Female Employees and described the health status of their children.

25.     One purpose of DuPont's blood sample study was to evaluate the Female Employees for PFOA exposure, to monitor umbilical cord blood for the presence of PFOA, to test the babies' blood for the presence of PFOA, and to evaluate reproductive outcomes among the Female Employees, including birth defects.

26.     By 1981, DuPont was aware of the presence of PFOA in the umbilical cord blood of at least one of the Female Employees and in the blood of another Female Employee's baby.

Thus, DuPont knew or should have known from this study that PFOA moved from the mother, through the placenta, to the fetus.

27.     In 1982, DuPont reported data to the EPA regarding the transplacental movement of PFOA in rats.  The EPA considered this information to be "substantial risk data."  DuPont failed to disclose to the EPA, however, that it had obtained human blood sampling data in 1981 that confirmed the transplacental movement of PFOA in humans, and further failed to disclose to the EPA the information it possessed concerning the presence of birth defects (described herein below) in the babies of its Female Employees exposed to PFOA.

28.     The EPA contends that DuPont's human blood sampling information demonstrating the transplacental movement of PFOA "reasonably supports the conclusion that PFOA presents a substantial risk of injury to human heath."

29.     More specifically, the EPA contends that DuPont's human blood sample data demonstrating that PFOA crosses the human placental barrier between PFOA-exposed mothers and their fetuses suggest that the fetuses could experience toxic effects from PFOA, including, bioaccumulation and, as observed in animal tests, developmental toxicity and liver toxicity.

30.     The EPA considers DuPont's human blood sampling information that confirms transplacental migration of PFOA "to reasonably support the conclusion of a substantial risk of injury to health or to the environment."

31.     Moreover, the EPA considers DuPont's blood sample data confirming the transplacental movement of PFOA to be "known toxicological information" about PFOA.

32.     Documents maintained by DuPont chronicling the health of babies born to DuPont's Female Employees exposed to PFOA indicate birth defects in two (2) of seven (7) babies.  One child had eye and tear duct defects and the second had nostril and eye defects.

33.     Among other things, as a result of DuPont's failure to disclose its 1981 blood sample data to the EPA, the EPA launched an investigation into DuPont's concealment of its study information and determined that DuPont had engaged in unlawful behavior by concealing the blood sample study results.

34.     The EPA, in its complaint against DuPont, contends that DuPont violated the Federal Toxic Substances Control Act from June 1981 to March 2001 by not reporting human health risks from exposure to PFOA:  [the EPA's efforts to investigate the risks posed by PFOA] might have been more expeditious had the data on transplacental movement of the chemical in humans been submitted immediately by DuPont when DuPont obtained the information in 1981.

35.     DuPont has since settled the claims brought by the EPA claiming it violated the Federal Toxic Substances Control Act through a settlement in which DuPont has been required to pay the largest civil administrative penalty ever levied by the United States Environmental Protection Agency.

36.     In May 2005, a federal grand jury assembled by the U.S. Justice Department's Environmental Crimes Section issued a subpoena to DuPont regarding DuPont's use of PFOA.

37.     PFOA has been linked to cancer, organ damage, and other negative health effects in tests on laboratory animals.  For example, male and female rats and mice have developed several different kinds of tumors when exposed to PFOA.

38.     Various studies have confirmed that exposure to PFOA causes or may cause vascular disease, including in a study involving DuPont workers.

39.     DuPont's study of the blood of its workers also demonstrates a statistically significant correlation between cholesterol and PFOA.  There are animal studies showing changes in blood chemistry associated with PFOA exposure that bolsters this human study.

40.     Studies have shown that exposure to PFOA is associated with increased incidences of prostate cancer.

41.     DuPont became aware by at least 1984 that the PFOA it had been purchasing from 3M and using in its manufacturing operations at its Washington Works Plant in West Virginia had been detected in public drinking water supplies for communities near the plant in West Virginia and Ohio, and that PFOA was likely present in the air outside the Washington Works site fence line.

42.     Recent testing of tap water supplied from wells owned and operated by the Parkersburg City Water Department that supplies public drinking water to the residents of the City of Parkersburg, West Virginia, near DuPont's Washington Works Plant, has revealed the presence of PFOA or C-8 in that water above 0.05 ppb, with levels in finished water as high as 0.079 ppb, and at least one private tap result as high as 0.057 ppb.

43.     As part of a settlement in 2005 of a class action brought against DuPont in West Virginia in 2001 for contamination of public and private drinking water supplies with PFOA released from DuPont's Washington Works Plant, DuPont has agreed to pay for the installation of treatment systems to reduce PFOA contamination in certain public and private water supplies in Ohio and West Virginia where PFOA had been detected at or above 0.05 ppb.  At the time of that settlement, water tested for PFOA or C-8 from the City of Parkersburg Water Department was either non-detectable or below the 0.05 ppb level.

44.     In conjunction with the settlement of the 2001 class action brought against DuPont in West Virginia for contamination of public and private drinking water supplies with PFOA released from DuPont's Washington Works Plant, DuPont has separately agreed to pay for bottled water for those using public or private water supplies contaminated with 0.05 ppb or more PFOA until such time as the water treatment systems are in place.

45.     As of today's date, DuPont has not offered to provide and/or pay for any treatment of any public water provided by the Parkersburg City Water Department that is contaminated with PFOA attributable to DuPont's Washington Works Plant, nor has DuPont offered to supply bottled water to those using the contaminated water provided by the Parkersburg City Water Department.

46.     As part of the settlement of the 2001 class action lawsuit brought against DuPont in West Virginia involving contamination of public and private drinking water supplies with PFOA attributable to releases from DuPont, DuPont has agreed that medical monitoring of impacted community residents is appropriate and should be paid for by DuPont if there is a probable link between such residents' exposure to PFOA and any serious latent human disease, including birth defects.

47.     The Washington Works Plant is located next to the Ohio River and is adjacent to several populated municipalities, including, but not limited to, Parkersburg, West Virginia.

48.     The Washington Works Plant is comprised of numerous operating units, including a chemical manufacturing plant, loading and unloading areas, materials storage areas, one or more landfills or other waste disposal areas, and a wastewater treatment plant. During the course of its operations at the Washington Works Plant, DuPont has allowed, caused, and/or otherwise permitted and is continuing to so allow, cause, and permit release of C-8 from the Washington Works Plant into the waters that are and have been used for human drinking purposes.

49.     PFOA or C-8 is not known to ever break down in water, soil, air, or the human body.

50.     PFOA or C-8 is a bioretentive substance.

51.     PFOA or C-8 is a bioaccumulative substance.

52.     PFOA or C-8 is a biopersistent substance.

53.     PFOA or C-8 is a known animal carcinogen.

54.     PFOA or C-8 is a multisite carcinogen in rats.

55.     PFOA or C-8 is hepatotoxic (a toxin in the liver) to animals.

56.     PFOA or C-8 is associated with developmental effects in animals.

57.     On information and belief, PFOA or C-8 attributable to releases from the Washington Works Plant have contaminated the air, soil, biota, surface water (including the Ohio River), groundwater, sediments and public and/or private human drinking water supplies/sources located on or near the Washington Works Plant, including the Parkersburg City Water Department water wells.

58.     PFOA or C-8 is subject to atmospheric dispersion associated with the prevailing wind patterns.  This dispersion results in human exposure both on-site and off-site of the Washington Works Plant.

59.     Because PFOA or C-8 is not a naturally occurring substance, all PFOA or C-8 found in human blood serum and/or plasma is attributable to human activity.

60.     USEPA began reviewing the toxicity of PFOA after 3M began disclosing additional information to USEPA in the late 1990s that revealed potential developmental, reproductive, and carcinogenic effects of PFOA and disclosed that PFOA is being found in the blood of the general U.S. population and in the blood of wildlife worldwide.

61.     By at least May 2000, DuPont had learned that 3M, the manufacturer of the PFOA material DuPont had been using, had decided to stop manufacturing and selling PFOA, based upon concerns associated with the bio-persistence and relative toxicity of PFOA.

62.     Despite knowledge of the same bio-persistence and toxicity concerns known to 3M relating to the use of PFOA and its release into the environment, DuPont has refused to stop using PFOA or making other perfluorinated chemicals that might degrade into, form, or

otherwise result in the presence of PFOA in the environment.  In fact, DuPont has begun the direct manufacture of PFOA at its own plant in Fayetteville, North Carolina.

63.     EPA has noted that PFOA presents developmental and reproductive risks to humans.

64.     In February 2006, EPA's Science Advisory Board approved the recommendation of its PFOA Review Panel ("SAB Panel") that EPA revise its description of PFOA's human cancer relevance to reflect the fact that PFOA meets the criteria for characterization as a "likely" human carcinogen.

65.     The SAB Panel has indicated that they will recommend in their final report, based on animal studies, limited human occupational epidemiological studies, and other scientific data, that EPA's PFOA risk assessment addresses a variety of potential adverse health effects in humans, including liver, testicular, pancreatic, and mammary or breast cancer; liver histopathology other than liver cancer; alteration of lipid metabolism; immunotoxicity and effects on hormonal systems; developmental effects; and neurotoxicity and effects on the behavioral function.

66.     Upon information and belief, DuPont has known and/or suspected for many years that releases of PFOA or C-8 from its Washington Works Plant have contaminated (and continue to contaminate) the drinking water utilized by the Plaintiffs and the other class members.

67.     In spite of its knowledge, which was far superior to that of Plaintiffs and the other class members, DuPont negligently, carelessly, wrongfully, recklessly and/or intentionally has failed to advise and/or warn citizens living and/or working in the area surrounding the Washington Works Plant, including but not limited to Parkersburg, West Virginia, about the presence of PFOA or C-8 in their drinking water and failed to fully and accurately disclose the true toxicity risks and bioaccumulation risks associated with those chemicals.

68.     DuPont negligently, carelessly, wrongfully, recklessly and/or intentionally has failed to take appropriate steps to try to reduce the levels of PFOA or C-8 in the drinking water consumed by the Plaintiffs and the other class members.

69.     The releases of PFOA or C-8 from the Washington Works Plant have adversely impacted and continue to adversely impact the value of those real properties in which Plaintiffs and the other class members have an ownership or other possessory interest.

70.     The releases of PFOA or C-8 from the Washington Works Plant have possibly and/or have made and/or continue to make Plaintiffs and the other class members physically ill and/or otherwise physically harmed (including, but not limited to blood and/or bodily contamination via PFOA or C-8 and/or sub-cellular damage), and/or have caused and continue to cause associated emotional and mental stress, anxiety, and fear of current and future illnesses, including but not limited to, fear of significantly increased risk of cancer and other disease, among Plaintiffs and the other class members.

71.     Each person who has consumed, ingested, will consume or ingest, drinking water supplied by the Parkersburg City Water Department has been, or will be, at an increased risk for real and present physical and biologic injury (including, but not limited to blood and/or bodily contamination via PFOA or C-8 and/or sub-cellular damage).

72.     PFOA or C-8 is a hazardous and/or toxic substance.

73.     There is a probable link between exposure to PFOA or C-8 and subclinical or subcellular injury and/or serious latent human disease.

74.     Each person who has and/or will consume water from the Parkersburg City Water Department for at least one year has and/or will have a significantly increased risk of contracting one or more serious latent diseases.

75.     The increased risk of serious latent disease referred in paragraph 74 makes it reasonably necessary for each person so exposed to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of such exposure.

76.     Monitoring procedures exist that make possible the early detection of the latent diseases referred above in paragraph 75.

## CLASS ACTION ALLEGATIONS

77.     This civil action is an appropriate case to be brought and prosecuted as a class action by Plaintiffs against DuPont pursuant to Rule 23 of the Federal Rules of Civil Procedure.

78.     There exists a class of individuals who have consumed drinking water for at least one year from the Parkersburg City Water Department.

79.     Because each of the named Plaintiffs have consumed water from the Parkersburg City Water Department for at least one year, the named Plaintiffs have claims against DuPont that are typical of the claims of the class members, and the named Plaintiffs will fairly and adequately protect the interests of the class with respect to the appropriate common issues of fact and law.

80.     The named Plaintiffs have hired counsel who are competent to prosecute this action for and on behalf of the Plaintiffs and the class.

81.     The prosecution of this civil action by all Plaintiffs in separate actions: (1) would create a risk of inconsistent or varying adjudications with respect to individual members of the class; (2) could, as a practical matter, be dispositive of interests of other members of the class who were not parties to the separate actions; and (3) may substantially impair or impede the Plaintiffs' ability to protect their interests.

82.     DuPont has acted or refused to act on grounds generally applicable to the class making declaratory, injunctive and equitable relief appropriate for the whole class.

13

83.     The class includes thousands of persons and is therefore so numerous that it would be impracticable to join all of them as named Plaintiffs in this action.

84.     There are questions of law and fact common to the members of the class that predominate over any questions affecting only individual class members, including, but not limited to the following:

> a.      Whether the Plaintiffs and other class members are entitled to medical monitoring relief.
>
> b.      Whether DuPont is liable to the Plaintiffs and the class for damages proximately caused by a continuing trespass of their bodies and property.
>
> c.      Whether DuPont is liable to the Plaintiffs and the class for damages proximately caused by the Defendant's creation of a private nuisance.
>
> d.      Whether DuPont is liable to the Plaintiffs and the class for damages proximately caused by the Defendant's creation of a public nuisance.
>
> e.      Whether DuPont is liable to the Plaintiffs and the class for damages proximately caused by DuPont's negligence.
>
> f.      Whether DuPont committed a battery on Plaintiffs and the class and is thereby liable for compensatory relief.
>
> g.      Whether DuPont is liable to the Plaintiffs and the class for punitive damages.
>
> h.      Such other common factual and legal issues as are apparent from the allegations and causes of action asserted in this Amended Complaint.

85.     Plaintiffs will fairly and adequately protect the interests of the class because the interests of Plaintiffs as class representatives are consistent with those of the members of the class.

86.     Prosecution of a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

87.     The interests of members of the class, as to common questions of law and fact, in individually controlling the prosecution of separate actions do not outweigh the benefits of a class action as to those issues.

88.     Any difficulties in management of this case as a class action are outweighed by the benefits of a class action with respect to disposing of common issues of law and fact as to the large number of litigants, and it is desirable to concentrate the litigation in one forum for the management of this civil action.

## FIRST COUNT

## NEGLIGENCE

89.     Plaintiffs and the other class members incorporate the allegations contained in all prior paragraphs of this Amended Complaint as if fully restated herein.

90.     In connection with its operation of the Washington Works Plant, DuPont has had and continues to have a duty to operate and manage the Washington Works Plant and its related wastes in such a way as to not create a nuisance or condition causing any injury or damage to human health or the environment.

91.     DuPont breached its duty of care by negligently operating and managing the Washington Works Plant and conducting other operations and activities at the Washington Works Plant in such a manner as to negligently cause, permit, and/or allow the release of PFOA or C-8 into the environment, thereby contaminating the drinking water of Plaintiffs and the other class members.

92.     DuPont's negligent acts and omissions proximately caused and continue to proximately cause damage to Plaintiffs and other class members in the form of bodily injury (including, but not limited to blood and/or bodily contamination via PFOA or C-8 and/or sub-cellular damage) and property damage, in addition to creating conditions that are harmful to

human health and the environment, for which DuPont is liable, including liability for all appropriate medical monitoring of Plaintiffs and the other class members.

93.     As a proximate result of the aforesaid acts and omissions, DuPont and those acting for and on its behalf and as agents, ostensible agents, employees, conspirators and joint venturers of others, contaminated the environment with PFOA or C-8, and was consumed by Plaintiffs and the class which Plaintiffs seek to represent, and Plaintiffs and the other class members were injured as herein alleged.

94.     The aforesaid acts and omissions of DuPont were negligent, and as approximate result, Plaintiffs and the class members have suffered and/or will in the future suffer damage in the form of bodily injury (including, but not limited to blood and/or bodily contamination via PFOA or C-8 and/or sub-cellular damage), emotional distress, and/or property damage all of a type special and common to members of the class but not common to the general public, for which DuPont is liable, including liability for all appropriate medical monitoring relief required by Plaintiffs and the other class members.

## SECOND COUNT

## GROSS NEGLIGENCE, RECKLESS, WILLFUL

## AND WANTON CONDUCT

## (CLAIM FOR EXEMPLARY OR PUNITIVE DAMAGES)

95.     Plaintiffs and the other class members incorporate the allegations contained in all prior paragraphs of this Amended Complaint as if fully stated herein.

96.     At all times pertinent hereto, the conduct of DuPont in causing, permitting, and allowing the release PFOA or C-8 into the environment, thereby contaminating the drinking water of Plaintiffs and the other class members was more than simple negligence, momentary thoughtlessness, inadvertence, or error of judgment on the part of DuPont.  Instead, DuPont's

conduct constitutes such an entire want of care and conscious indifference to the rights, welfare, safety, and health of Plaintiffs and the other class members such that DuPont's acts constitute gross negligence.

97.     DuPont's grossly negligent acts and omissions proximately caused and continue to proximately cause damage to Plaintiffs and other class members in the form of bodily injury (including, but not limited to blood and/or bodily contamination via PFOA or C-8 and/or sub-cellular damage) and property damage, in addition to creating conditions that are harmful to human health and the environment.

98.     DuPont's conduct involved deliberate acts or omissions with knowledge of a high degree of probability of harm to the plaintiffs and other class members and a reckless indifference to their welfare.

99.     DuPont's conduct demonstrated a willful and wanton, malicious and reckless disregard of the rights of the Plaintiffs and other class members so as to warrant the imposition of punitive damages.

## THIRD COUNT

## PRIVATE NUISANCE

100.     Plaintiffs and the other class members incorporate herein the allegations contained in all prior paragraphs of this Amended Complaint as if fully restated herein.

101.     DuPont's acts and omissions with respect to the releases of PFOA or C-8 caused and/or continue to cause a material, substantial, and/or unreasonable interference with Plaintiffs' and the other class members' use and/or enjoyment of their properties, and has materially diminished and/or continues to diminish the value of such properties.

102.     DuPont's material, substantial, and/or unreasonable interference with the use and/or enjoyment of Plaintiffs' and the other class members' properties and/or continuing

substantial and/or unreasonable interference with such use and/or enjoyment constitutes a continuing private nuisance.

103.    DuPont's creation and/or continuing creation of a continuing private nuisance proximately caused and/or continues to proximately cause damage to Plaintiffs and the other class members in the form of bodily injury (including, but not limited to blood and/or bodily contamination via PFOA or C-8 and/or sub-cellular damage), emotional distress, and/or property damage all of a type special and common to members of the class but not common to the general public, for which DuPont is liable, including liability for all appropriate medical monitoring relief required by Plaintiffs and the other class members.

**FOURTH COUNT**

**PAST AND CONTINUING TRESPASS**

104.    Plaintiffs and the other class members incorporate herein the allegations contained in all prior paragraphs of this Amended Complaint as if fully restated herein.

105.    DuPont's intentional acts and/or omissions have resulted and/or continue to result in the unlawful release and/or threatened release of PFOA or C-8 at, under, onto, and/or into Plaintiffs' and the other class members' bodies and/or lawfully possessed properties.

106.    The PFOA or C-8 present on Plaintiffs' and the other class members' properties and/or in their bodies originating from the Washington Works Plant were at all relevant times hereto, and continue to be, the property of DuPont.

107.    The invasion and presence of PFOA or C-8 at, under, onto, and/or into Plaintiffs' and the other class members' properties and/or bodies were and continue to be without permission or authority from Plaintiffs or any of the other class members or anyone who could grant such permission or authority.

108.     The presence and continuing presence of PFOA or C-8 in Plaintiffs' and the other class members' properties and/or bodies constitute a continuing trespass.

109.     DuPont's past and continuing trespass upon Plaintiffs' and the other class members' properties and/or bodies has proximately caused and/or continues to proximately cause damage to Plaintiffs and the other class members in the form of bodily injury (including, but not limited to blood and/or bodily contamination via PFOA or C-8 and/or sub-cellular damage), emotional distress and/or property damage, for which DuPont is liable, including liability for all appropriate medical monitoring of Plaintiffs and the other class members.

## FIFTH COUNT

## PAST AND CONTINUING BATTERY

110.     Plaintiffs and the other class members incorporate herein the allegations contained in all prior paragraphs of this Amended Complaint as if fully restated herein.

111.     DuPont's intentional acts and omissions have resulted and continue to result in the unlawful invasion, contact, and/or presence of PFOA or C-8 with, onto, and/or into Plaintiffs' and the other class members' bodies.

112.     DuPont's intentional acts and/or omissions were done with the knowledge and/or belief that the invasion, contact, and/or presence of PFOA or C-8 with, onto, and/or into Plaintiffs' and/or other class members' bodies were substantially certain to result from those acts and/or omissions.

113.     The PFOA or C-8 that Plaintiffs and other class members have ingested or otherwise been exposed to, or that are present in the bodies of Plaintiffs and the other class members, originating from the Washington Works Plant were at all relevant times hereto, and continue to be, the property of DuPont.

114.    The invasion, contact, and/or presence of PFOA or C-8 with, onto, and/or into Plaintiffs' and the other class members' bodies were and continue to be without permission or authority from Plaintiffs or any of the other class members or anyone who could grant such permission or authority.

115.    The presence and continuing invasion, contact, and/or presence of PFOA or C-8 with, onto, and/or into Plaintiffs' and the other class members' bodies constitute a continuing battery.

116.    DuPont's past and continuing battery upon Plaintiffs' and the other class members' bodies proximately caused and continue to proximately cause damage to Plaintiffs and the other class members in the form of bodily injury (including, but not limited to blood and/or bodily contamination via PFOA or C-8 and/or sub-cellular damage), emotional distress and other damage, for which DuPont is liable, including liability for all appropriate medical monitoring of Plaintiffs and the other class members.

## SIXTH COUNT

## MEDICAL MONITORING

117.    Plaintiffs and the other class members incorporate herein the allegations contained in all prior paragraphs of this Amended Complaint as if fully restated herein.

118.    Each person who has consumed and/or ingested, will consume and/or ingest, for at least one year, water supplied by the Parkersburg City Water Department, has been or will be, relative to the general population, significantly exposed to PFOA or C-8.

119.    PFOA or C-8 is a proven hazardous substance.

120.    There is a probable link between exposure to PFOA or C-8 and serious latent human disease.

20

121.    Each person who has been or will be significantly exposed to PFOA or C-8 through the consumption and/or ingestion for at least one year of water from the Parkersburg City Water Department has or will have a significantly increased risk of contracting one or more serious latent diseases relative to what would be the case in the absence of such exposure.

122.    The increased risk of serious latent disease described in paragraph 121 makes it reasonably necessary for each person so exposed to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of such exposure.

123.    Monitoring procedures exist that make possible the early detection of the diseases referenced in paragraphs 122-123 above.

124.    As a proximate result of the acts and omissions of DuPont as alleged in this Amended Complaint, Plaintiffs and the class have been and will be greatly annoyed and inconvenienced, have suffered and will suffer fear, humiliation and/or embarrassment and have been and will be otherwise damaged as alleged in this Amended Complaint.

125.    Plaintiffs and the class have no adequate remedy at law and, therefore, medical monitoring and the establishment of a medical monitoring fund are reasonably necessary to pay for medical monitoring.

## SEVENTH COUNT

## PUBLIC NUISANCE

126.    Plaintiffs and the other class members incorporate herein the allegations contained in all prior paragraphs of this Amended Complaint as it is fully restated herein.

127.    DuPont's acts and omissions with respect to the releases of PFOA or C-8 caused and/or continue to cause a significant, material, substantial, and/or unreasonable interference with rights common to the general public including the public health, safety, peace, comfort,

convenience and/or the public right to clean water, unlawfully hurting and/or inconveniencing an indefinite number of persons, constituting a continuing public nuisance.

128.    DuPont's acts and omissions causing a continuing public nuisance caused and/or continues to cause a significant, material, substantial, and/or unreasonable interference with rights peculiar to and common to the Plaintiffs and other class members causing special injury to the Plaintiffs and other class members as residential water customers of the Parkersburg Water District for at least one year, including, but not limited to, intrusion into Plaintiffs' and other class members' homes and bodies, rendering Plaintiffs' and other class members' water supply unfit for domestic purposes and human consumption, and placing Plaintiffs and other class members at an increased risk of developing serious latent diseases, for which DuPont is liable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and each member of the Class have been damaged, and are entitled to damages in an amount to be proven at trial, in an aggregate amount to exceed the jurisdictional requisite of this Court, including compensatory damages, attorneys' fees and costs, and therefore request the following relief:

1.    An order from this Court ordering that this is an appropriate action to be prosecuted as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and finding that Plaintiffs and their counsel are appropriate representatives and appropriate counsel for the class, and that this action shall proceed as a class action on all common issues of law and fact;

2.    A judgment against DuPont that DuPont is liable to Plaintiffs and the other class members for all appropriate medical monitoring relief in an amount to be determined at trial;

3.    Compensatory and punitive damages in an amount to be determined at trial;

4.    The costs, disbursements and attorneys' fees of this action as provided by law;

5.     Pre-judgment and post-judgment interest;

6.    Appropriate equitable and injunctive relief, including providing notice and medical monitoring relief to the Plaintiffs and the class and to abate and/or prevent the release

and/or threatened release of PFOA or C-8; and providing alternative drinking/bottled water, free of PFOA/C-8 contaminates to Plaintiffs and the class; and

7.     For all other further and general relief, whether compensatory, equitable, or injunctive relief, as this Court may deem just and appropriate.

## JURY DEMAND

The Plaintiffs and the other class members demand trial by a jury on all of the triable issues of this Amended Complaint.


                                          Respectfully submitted,


                                          **s/**
Robert A. Bilott (OSB#046854)             R. Edison Hill (WVSB#1734)
Taft Stettinius & Hollister LLP           Harry G. Deitzler (WVSB#981)
425 Walnut Street                         Hill, Peterson, Carper,
Suite 1800                                  Bee & Deitzler, P.L.L.C.
Cincinnati, OH 45202                      NorthGate Business Park
513-381-2838                              500 Tracy Way
                                          Charleston, WV  25311-1261
J. Steven Justice (OSB#0063719)           304-345-5667 (office)
Taft Stettinius & Hollister LLP           304-345-1519 (fax)
Fifth Third Center                        rehill@hpcbd.com
110 North Main Street
Suite 900                                 Larry A. Winter (WVSB#4094)
Dayton, OH 45402                          Winter Johnson & Hill PLLC
937-228-2838                              United Center
                                          500 Virginia Street, East
                                          P.O. Box 2187
                                          Charleston, WV  25328
                                          304-345-7800
                                          *Counsel for Plaintiffs*