THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
PARKERSBURG DIVISION

**WILLIAM R. RHODES,**
**RUSSELL H. MILLER, AND**
**VALORI A. MACE,**

              **Plaintiffs,**

**v.**                                   **CIVIL ACTION NO. 6:06-0530**
                                                 **(Chief Judge Joseph Robert Goodwin)**

**E. I. DU PONT DE NEMOURS AND COMPANY,**

              **Defendant.**

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Though cloaked with new alternative labels, such as "contamination" and "interference," the alleged injury that provides the basis for all of Plaintiffs' claims remains the same. After more than three years of litigation, Plaintiffs have not identified any injury they have allegedly suffered that is distinguishable from their alleged increased risk of disease as a result of trace levels of perfluorooctanoic acid ("PFOA") present in the drinking water provided by the Parkersburg Utility Board ("PUB"). But, as demonstrated herein, Plaintiffs' claims all fail as a matter of law.

Alleged increased risk of disease is not a legally cognizable injury capable of supporting any claim other than medical monitoring. Even for medical monitoring, though, Plaintiffs lack proof to demonstrate critical elements of their claim. Plaintiffs' experts, notwithstanding considerable variation in their expert opinions during the pendency of this litigation, have been consistent on two points: (1) they have no opinion as to the dose necessary for PFOA to cause

human disease, and (2) they cannot demonstrate that DuPont is the source of trace levels of PFOA in Plaintiffs' blood or water. Additionally, Plaintiffs' experts stand alone in their opinion that PFOA at the trace levels present in PUB drinking water causes increased risk of serious disease. Not only is this expert proof inadmissible, Plaintiffs fail to put forth sufficient evidence to sustain their burden to demonstrate causation or injury as a matter of law. As a result, DuPont is entitled to summary judgment as to all Plaintiffs' claims.

In addition, Plaintiffs' public and private nuisance, battery, trespass, and punitive damage claims suffer from other fatal defects. Plaintiffs lack standing to pursue a public nuisance claim and, in any event, the trace levels of PFOA at issue here do not constitute a nuisance. Until recent developments in the capability of analytical chemistry, it was not even possible to measure the part per trillion levels of PFOA present in PUB drinking water, which are well below the governing regulatory guidance to protect public health.[1] The West Virginia Supreme Court has not recognized exposure to alleged chemical contamination as a basis for either battery or trespass claims. Finally, DuPont's compliance with applicable regulations and voluntary efforts to reduce and study PFOA emissions preclude the imposition of punitive damages as a matter of law. Consequently, DuPont is entitled to summary judgment on these claims.

## II.  STATEMENT OF FACTS

Plaintiffs would have this Court believe that DuPont was the only potential source of PFOA in the PUB water or in Plaintiffs' blood, despite the testimony of Plaintiffs' own expert witness, Dr. David Gray, who testified that he does not know the source of the PFOA in the PUB water and has not connected the PFOA in the water to Washington Works. Gray Dep. at 74:1-

---

[1] In January 2009, EPA announced a national Provisional Health Advisory of 0.4 parts per billion (ppb) for PFOA in drinking water. The highest measured level of PFOA in PUB finished water has been 0.079 ppb, taken at a particular time when two of the wells with the highest concentrations of PFOA were in use. It is undisputable that the concentrations of PFOA are lower when the wells with lower levels of PFOA are in use.

75:12 (June 2, 2009) (Ex. 1).  Similarly, Plaintiffs have failed to identify any hydrogeologist, fate

and transport expert, or any other expert who can testify that PFOA in PUB water results from

operations at Washington Works.  Plaintiffs simply cannot establish that DuPont is responsible

for the trace levels of PFOA found in Plaintiffs' water or blood.

Perfluorinated chemicals are routinely detected around the globe:  in surface waters, air,

sludge, soils, sediments, ice caps, wildlife, and human tissue.[2]  PFOA has regularly been

measured in human blood serum in the general population at levels ranging from 1.9 to 52.3 ppb.

Levy Dep at 236:3-237:8 (Jan. 29, 2008) (Ex. 2).[3]  Multiple potential sources exist for PFOA

found in the environment and human blood serum, including wastewater treatment plant

discharges, use of fire fighting foam, and breakdown of other products.  *See* Dkt. No. 193 at Ex.

B.34.

Emissions of wastewater through plant outfalls cannot reach the PUB wellfields, which

largely draw water from the Ohio River approximately eight miles upstream from Washington

Works.  Moreover, approximately three years ago, in July 2006, each Plaintiff's blood serum was

analyzed for PFOA, as well as other perfluorinated compounds, including PFOS, a compound

that DuPont neither manufactures nor uses at Washington Works.  The reported serum PFOA

concentrations measured in July 2006 were 14.5, 14.7, and 21.1 ppb, but the PFOS levels, which

simply cannot come from Washington Works, were higher at 18.5, 24.6, and 27.6 ppb.  *See id* at

Ex. C.6.

When DuPont analyzed PUB water in the 1980s for PFOA, the water was non-detect.

Furthermore, it is not disputed that measurements of finished water up through at least 2002 were

non-quantifiable for PFOA (likely in the range of 0.01 - 0.049 ppb).  *Id.* at 12.  Since that time,

---

[2] *See generally* Defendant's Memorandum in Opposition to Plaintiffs' Motion for Class Certification [Dkt. No. 193]
Exs. B.8 and B.9.
[3] *See* Dkt. No. 193 Exs. B.10 and B.11.

finished water data has fluctuated between 0.027-0.079 ppb. *Id.*; Plaintiffs' Memorandum in Support of Motion for Class Certification Exs. 19 and 23 [Dkt. No. 188]. All of these measurements are well below the only applicable regulatory guidance for PFOA in PUB drinking water, which is 0.4 ppb.[4] Thus, until November 2006, PFOA levels were less than 0.05 ppb; since November 2006, the measured levels may have fluctuated slightly, but all data has been well below the level in use by controlling regulatory agencies to determine whether any remedial measure is called for to protect public health of PUB customers. Indeed, Plaintiffs' own data showing that one Plaintiff has *non-detectable* levels of PFOA at his tap after use of a PUR filter illustrates the very low levels present in PUB water. RH008522 (Ex. 7).

The current state of scientific knowledge includes no published, peer-reviewed study of humans exposed to PFOA, at the levels found in PUB drinking water, that has concluded that PFOA exposure is capable of causing human disease. The absence of causal nexus is not a function of lack of scientific study, as Plaintiffs' own experts cite literature examining the potential for PFOA to cause human disease from at least the 1970s. Moreover, Plaintiffs' experts concede that they offer no opinion as to the level at which PFOA is capable of causing human disease. Aug. 6, 2008 Hr'g. Tr. at 28:12-15; 115:23-116:6 (Ex. 4); July 3 Tr. at 128: 11-14 (Ex. 5); Ex. 1 at 28:3-30:1; 75:6-12.

Nonetheless, since the 1980s, DuPont has undertaken multiple measures in cooperation with regulatory agencies to reduce PFOA emissions from Washington Works and further the understanding of science surrounding PFOA in the environment. For instance, DuPont has included PFOA monitoring as part of a number of permitting obligations as well as compliance with various environmental statutes. May 16, 2009 Report of Thomas C. Voltaggio (Ex. 6). At

---

[4] See USEPA Preliminary Health Advisories for Perfluorooctanoic Acid (PFOA) and Perfluorooctane Sulfonate (PFOS), available at http://www.epa.gov/waterscience/criteria/drinking/pha-PFOA_PFOS.pdf (Ex. 3).

Washington Works, as of year-end 2006, DuPont had reduced annual air discharges by 99.1% and had reduced annual water discharges by 99.2% over year 2000 levels.  *See* USEPA, Order on Consent, in the Matter of E. I. du Pont de Nemours and Co. ¶ 20 (March 10, 2009) (Ex. 8).[5]

Simply put, Plaintiffs have failed to establish that the trace levels of PFOA in Plaintiffs' water or blood result from DuPont's tortious conduct, much less the intentional conduct required to support certain tort claims as well as punitive damages, and have failed to demonstrate injury as a matter of law.

## III.     ARGUMENT

### A.     Plaintiffs Fail to Demonstrate that DuPont's Operations Have Resulted in the Trace Levels of PFOA in Plaintiffs' Blood or Water.

Plaintiffs bear the burden of proof to establish that DuPont caused whatever injury they allege.  Yet, Plaintiffs offer no expert opinion to demonstrate that DuPont's operations at Washington Works, approximately eight miles downstream of the location where the PUB well fields largely draw their water, have contributed to the levels of PFOA measured in PUB water. Plaintiffs similarly offer no expert opinion on the source for the PFOA measured in Plaintiffs' blood in 2006, almost three years ago.  Indeed, Plaintiffs' expert, Dr. Gray, concedes that the connection has not been made between DuPont and any PFOA found in PUB water or the Plaintiffs' blood.  Ex. 1 at 74:1-75:12.  All of Plaintiffs' claims depend upon this fundamental element that DuPont is the source of PFOA in PUB water.  In the absence of scientific proof to establish this point, though, Plaintiffs are unable to carry their burden for each of their claims.

---

[5] DuPont has also committed to no longer make, use, or buy PFOA globally by 2015, and is on track to meet this commitment. *See* http://www.epa.gov/oppt/pfoa/pubs/dupontresponse.pdf (Ex. 9).

**B.      Plaintiffs Have Abandoned Their Claims of Manifest Physical Injury to Person or Property.**

After three years of litigation and repeated discovery requests, Plaintiffs have still failed to identify any injury or corresponding damages that they have allegedly experienced, other than an unsubstantiated claim of increased risk of serious disease and the associated costs of medical monitoring. Instead, Plaintiffs have cluttered the record with a panoply of alleged injuries, several subsequently abandoned expressly, others not supported by any evidence (abandoned implicitly), and still others vaguely described with undefined terms such as "contamination."

This case began as a putative class action seeking medical monitoring relief allegedly required because of an increased risk of disease. As this Court noted in denying class certification, Plaintiffs all but "ignored" their other common law claims[6] throughout the class certification process. Mem. Op. and Order at 12 (Sept. 30, 2008) [Dkt. No. 255]. Undaunted by this Court's denial of certification, a result left undisturbed by the Fourth Circuit,[7] Plaintiffs moved for leave to file a renewed motion to certify their common law claims based entirely upon the pre-existing record, devoted almost exclusively to the issue of significantly increased risk. Despite Plaintiffs' suggestion that their individual claims would, if prosecuted, differ in kind, *see* Dkt. No. 267 at ¶ 81, in fact, they have turned out to be largely identical to those asserted on behalf of the putative class. Most notably, Plaintiffs have expressly abandoned their claims for manifest personal injury or property damage in the form of diminished property values.

The scope of personal injuries (not including medical monitoring) now properly before the Court is limited to claims for "temporary and permanent" contamination of Plaintiffs'

---

[6] Those claims included negligence, gross negligence, private nuisance, trespass, battery, and medical monitoring. Pls' 2d Amended Complaint [Dkt. No. 267]. In addition, Plaintiffs added a public nuisance count as part of their Second Amended Complaint. *Id.* All of these claims, other than medical monitoring, are collectively referred to as "common law claims."

[7] *See* Order Denying Petition to Appeal, *Rhodes, et al. v. E .I. du Pont de Nemours and Co.*, 6:06-0530 (4th Cir. Dec. 12, 2008).

"bodies and blood."  Pls. Supp. Resp. Def. 2d Set Interrog. 13 (Ex. 10).  Plaintiffs have expressly

abandoned all claims for "personal injury or bodily injury based upon their exposure to PFOA, in

that Plaintiffs do not claim that a particular illness or disease has been caused by PFOA

exposure."  *Id.*  This admission is appropriate, since Plaintiffs' experts failed to offer any opinion

that any Plaintiff has manifested any illness or disease specifically caused by PFOA.  Although

Plaintiffs at one time alleged sub-cellular injury,[8] none of the Plaintiffs' experts have opined that

PFOA exposure causes sub-cellular harm in general, or diagnosed PFOA-induced sub-cellular

harm in any of the Plaintiffs.  While Plaintiffs have requested relief in the form of medical

monitoring, they have failed to articulate any specific compensatory damages sought in

connection with this bodily "contamination" that has not impaired their physical function,

restricted their physical activities, or caused them to lose any wages or incur any past medical

monitoring expenses.

Similarly, Plaintiffs' property damage claims are limited to those for PFOA

contamination "in and on" their property.  Plaintiffs have abandoned any claims for diminished

property values or stigma.  They have not offered any expert testimony regarding diminished real

property values in connection with their trespass or nuisance claims.  *See* Ex. 10 Interrogs. 13

and14; Pls. Supp. Resp. Def. 1st Set Interrog. 4 (Ex. 11).  Plaintiffs have not offered any soil

samples as evidence of "contamination."  *Id.* Interrog. 6.  In fact, tap water samples are the only

evidence that Plaintiffs have offered to demonstrate that PFOA is physically present on their real

properties.  Plaintiffs have not offered any evidence that this "contamination" has caused any

physical injury to their property, but rather claim that it renders them "unable to enjoy" their

property.  *Id.* Interrog. 4.  The only specific interference with the use of their property claimed by

---

[8] *See* Compl. ¶¶ 70, 71, 92, 94, 97, 103, 109 and 116.

Plaintiffs is their use of water filtration and bottled water allegedly prompted by their concern about purported health risks of PFOA exposure.[9]  Plaintiffs never specify what they mean by "contamination" with PFOA.  If, as Plaintiffs have suggested, "contamination" means the presence of one molecule of PFOA,[10] recognition of such as either personal injury or property damage would lead to absurd results.

> ### C.      The Remaining "Injury" for All Plaintiffs' Claims – Their Alleged Increased Risk for Disease – Fails As A Matter Of Law.

While proof of a significantly increased risk is necessary to all of Plaintiffs' claims, by itself it is not sufficient.  In recognizing a claim for medical monitoring, the *Bower* court left the requirement of tortious conduct as a prerequisite to liability intact, but expanded for the tort of medical monitoring what may be considered an injury by permitting recovery in the absence of manifest personal injury.  *See Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424, 432-33 (W. Va. 1999).  *Bower* thus expanded the scope of compensable injury to include a significantly increased risk of serious latent disease, but only in extremely narrow circumstances.  In addition to proving a significantly increased risk of disease, a plaintiff has to establish, among other things, the existence, reasonableness, and need for medical testing that would not be required absent the exposure to the alleged toxin.  *See id.*  Moreover, *Bower* permits recovery of a specific and narrow form of relief — costs of medical monitoring expenses.  *See id.* at 431, 432. By asserting free-standing claims for negligence, nuisance, trespass, and battery based upon an

---

[9] Plaintiff Miller's use of water filtration since 1997 significantly predates the detection of PFOA in PUB water and was prompted by his desire to improve the water's taste.  Miller Dep. 101:25-102:4, 102:16-23, 109:2-6, 309:5-310:20 (May 4, 2007) (Ex. 12).  In addition, Plaintiff Rhodes has testified that he changed to bottled water due in part to concerns about a chlorine taste.  Rhodes Dep. at 56:1-15. (May 27, 2007) (Ex. 13).  As a result, Plaintiffs' change in drinking water habits cannot reasonably be attributed to the presence of PFOA in PUB water.  Notably, Plaintiffs have failed to produce a single receipt documenting their alleged expenses incurred for water filters and bottled water.

[10] July 2, 2008 Hr'g. Tr. at 172:4-173:17 (Ex.14); Ex. 5 at 74:6-10; 75:8-18; Ex. 2 at 310:21-311:16 (Jan. 30, 2008).

alleged increased risk of disease, Plaintiffs seek to make an end run around both of these limitations by recovering for an alleged increased risk, without the need to prove the other *Bower* elements.  Moreover, Plaintiffs have offered no measure of their alleged damages for "contamination" of their persons and property, so any compensation for these claimed injuries would be wholly arbitrary.  This Court should reject these efforts to expand liability far beyond the parameters recognized by the West Virginia Supreme Court in *Bower*.

Even if the Court were inclined to allow Plaintiffs to pursue their non-medical monitoring claims based upon a significantly increased risk, which would be wholly contrary to existing law, Plaintiffs will be unable to offer admissible expert testimony concerning either some increased risk of serious disease or the related issues of significant exposure and the alleged toxicity of PFOA at levels present in PUB water.[11]  As a result, all of their claims, including negligence, gross negligence and medical monitoring will ultimately fail as a matter of law based upon the absence of proof of proximate causation.  *See*, *e.g.*, *Tolley v. ACF Indus., Inc.*, 575 S.E.2d 158, 168-69 (W. Va. 2002) (affirming summary judgment where medical causation expert failed to establish cause of plaintiff's condition).  *See also White v. Dow Chem. Co.*, No. 08-1165, 2009 U.S. App. LEXIS 7483, at *17 (4th Cir. Apr. 8, 2009) (providing adequate evidence of toxic exposure is required to prove causation and survive summary judgment) (citing *Tolley*).  Plaintiffs' nuisance, battery, and trespass claims, as well as their request for punitive damages, suffer from additional defects, described below, that provide alternative grounds for summary judgment in favor of DuPont.

---

[11] DuPont will file motions to exclude the opinions of Drs. Gray and Levy under *Daubert v. Merrill Dow* 509 U.S. 579 (1993).  Because Plaintiffs did not make their experts available for deposition until May 28 and June 2, 2009, DuPont could not complete its Daubert motions prior to filing this Motion for Summary Judgment.

**D.      Plaintiffs' Nuisance Claims Are Deficient As a Matter of Law.**

DuPont is entitled to summary judgment on Plaintiffs' public nuisance claim because Plaintiffs have not identified any special injury required to support such a claim.  Moreover, Plaintiffs have failed to create a genuine issue of material fact that the trace levels of PFOA in PUB water constitute either a public or private nuisance.

**1.      Plaintiffs Lack Standing to Pursue Public Nuisance.**

Plaintiffs lack standing to assert their public nuisance claim because they have failed to identify any special injury different from the injuries that they claim have been experienced by all PUB customers.  "Ordinarily, a suit to abate a public nuisance cannot be maintained by an individual in his private capacity, as it is the duty of the proper public official to vindicate the rights of the public."  *Hark v. Mountain Fork Lumber Co.,* 34 S.E.2d 348, 354 (W. Va. 1945); *Curry v. Boone Timber Co.*, 105 S.E. 263, 264 (W. Va. 1920).  To have standing, a public nuisance plaintiff must prove "an injury different from that inflicted on the public in general, not only in degree, but in character."  *Int'l  Shoe Co. v. Heatwole*, 30 S.E.2d 537, 540 (W.Va. 2002) (citations omitted) (interference with river use rights shared by public was not special injury). Without question, Plaintiffs have failed to demonstrate the requisite special injury to support standing.  Plaintiffs claim "special injury" in the form of contamination of and/or trespass to their bodies, blood, and property that has allegedly put them at some increased risk of developing serious latent diseases.  Ex. 10 Interrog. 13.  Plaintiffs' own experts contend this same alleged "injury" exists for anyone who has consumed water containing PFOA at the levels found in PUB water.  Ex. 14 at 172:4-173:17; Ex. 5 at 106:25-108:8.  Similarly, Plaintiffs have failed to offer any evidence that their alleged special injury differs in degree from that allegedly experienced by other PUB customers.  Plaintiffs have not compared the levels of PFOA in their blood to those of other PUB customers.  Even if evidence to make such a comparison were available, it would be

irrelevant according to Plaintiffs' own experts, who have denied the existence of a threshold exposure to PFOA that causes any increased risk of disease or a dose-response relationship. Ex. 4 at 28:12-15, 115:23-116:6; Ex. 5 at 128:11-14 ; *see also* Ex. 1at 28:3-30:1; 75:6-12; Ex. 2 at 492:3-16.

Plaintiffs' claim is not saved by their contention that "they have PFOA levels in their blood which PFOA levels are significantly higher than persons in areas not contaminated by PFOA." Ex. 10 Interrog. 13. Other PUB customers are the appropriate comparators for determining whether Plaintiffs have experienced a special injury. *See Curry*, 105 S.E. at 264 ("equity will not abate such a nuisance upon the application of one or more plaintiffs who sue in a private capacity, unless they show . . . that the nuisance causes them an injury different in kind from that suffered by others *similarly situated*" (emphasis added)). For this Court to hold otherwise would completely eviscerate the special injury requirement and enable any plaintiff to pursue a public nuisance claim simply by referring to unidentified persons in unspecified uncontaminated areas. Moreover, Plaintiffs have failed to offer any evidence that any areas "not contaminated" exist or that there are people "in" such areas. Plaintiffs have taken the position that a single molecule of PFOA results in contamination and a significantly increased risk of serious disease. *See supra* n.10. Trace levels of PFOA from many sources are ubiquitous in the environment and widespread in the blood serum of the general population. Thus, even if the general population were the appropriate comparator for determining special injury, the contamination and significantly increased risk of serious disease allegedly experienced by Plaintiffs is not, according to Plaintiffs' own experts, different in kind from that experienced by the general population.

### 2.   Trace Levels of PFOA Are Not a Public or Private Nuisance.

Plaintiffs have not raised a genuine issue of material fact that the presence of PFOA in PUB drinking water is a public or private nuisance.  A public nuisance can only be found where there is an unreasonable interference with a public right.  *See* Restatement (2d) of Torts § 821B (1979).  DuPont's emissions of PFOA have not resulted in violations of any applicable statute, ordinance, or administrative regulation.  Similarly, the levels of PFOA in PUB drinking water have never exceeded any applicable regulatory orders.

Plaintiffs' alleged modification of their drinking water habits based upon their concern about the alleged health effects of PFOA, standing alone, is insufficient evidence of an unreasonable interference to create a genuine issue of material fact.  *See Carter v. Monsanto*, 575 S.E.2d 342, 347 (W. Va. 2002) ("[F]ear alone is not a sufficient basis for recovery.").  Plaintiffs cannot prove an unreasonable interference without competent expert testimony that the presence of PFOA is "substantial" or "significant" in creating a significantly increased risk of serious latent disease.  *See id.* ("[i]n order for an interference to be 'substantial' or 'significant' . . . 'there must be a *real* and appreciable invasion of the plaintiff's interests'" (quoting Restatement (2d) of Torts 821F(c) (1979) (emphasis added)));  *see also Bower*, 522 S.E.2d at 432-33.  In the absence of this competent expert proof, as is the case here, DuPont is entitled to summary judgment on both the public and private nuisance claims.

### E.   Plaintiffs' Efforts to Manufacture Intentional Tort Claims Based on the Mere Presence of PFOA Fail As a Matter of Law.

Rather than assert claims for personal injury and property damage that they cannot prove, and make no effort to prove are specifically caused by PFOA, Plaintiffs assert novel intentional tort claims that apparently seek to impose liability for the "contamination" of their persons and property with any amount of PFOA.  In so doing, Plaintiffs seek to impose liability and,

potentially, punitive damages based merely upon exposure to a chemical substance, without proof of any harm resulting from such exposure. While the West Virginia Supreme Court has permitted claims for medical monitoring costs absent proof of manifest physical injury, it has not recognized other claims for unspecified compensation based solely upon exposure to allegedly toxic chemicals. *See, e.g., Carter*, 575 S.E.2d at 346-47. *Accord McClenathan v. Rhone-Poulenc*, 926 F. Supp. 1272, 1276 n.5 (S.D. W. Va. 1996) (citing *Funeral Servs. by Gregory, Inc. v. Bluefield Community Hosp.* ("*Gregory*"), 413 S.E.2d 79, 80 (1991), *overruled on other grounds by Courtney v. Courtney*, 437 S.E.2d 436 (1993)). This Court, sitting in diversity, should not expand the law of battery and trespass to recognize these novel theories unrecognized to date by the West Virginia Supreme Court. *See*, *e.g.*, *Washington v. Union Carbide Corp.*, 870 F.2d 957 (4th Cir. 1989).

Moreover, recognition of Plaintiffs' battery and trespass claims based upon the mere presence of PFOA in their persons and on their property, without proof of some resultant harm (here, significantly increased risk of disease), would lead to absurd results. As other courts have observed, "No useful purpose would be served by sanctioning actions in trespass by every landowner within a hundred miles of a manufacturing plant. Manufacturers would be harassed and the litigious few would cause the escalation of costs to the detriment of many." *Williams v. Oeder*, 103 Ohio App. 3d 333, 339 (1995) (no trespass for incursion of airborne particulates unless they cause "substantial damage" to the property).

### 1. DuPont is Entitled to Summary Judgment on Plaintiffs' Battery Claim.

Most importantly, West Virginia does not recognize a battery claim based solely upon exposure to allegedly toxic chemicals. *McClenathan*, 926 F. Supp. at 1276 n.5 ("The Court is not prepared to extend the contours of this tort to hold the mere presence and resultant inhalation of chemicals in the air constitutes a 'harmful or offensive contact' by the emitter.").

Even if such a claim were cognizable, Plaintiffs have failed to raise a genuine issue of material fact, precluding summary judgment on their battery claim.  Plaintiffs cannot demonstrate the harmful or offensive contact required to support a battery claim.  Under West Virginia law, an individual is liable for battery "'if (a) he acts intending to cause harmful or offensive contact . . . and (b) a harmful contact with the person of the other results.'"  *Gregory*, 413 S.E.2d at 82 (quoting Restatement (2d) of Torts § 13 (1965)) (emphasis omitted).  The contact at issue must result in bodily harm, which is defined as "any physical impairment of the condition of another's body, or physical pain or illness."  Restatement (2d) of Torts § 15 (2009).  Plaintiffs have not offered any evidence of bodily harm falling within this definition; Plaintiffs' experts have not diagnosed any of the Plaintiffs with any physical condition, impairment, or illness attributed to PFOA exposure.  Rather, Plaintiffs allege that they are at a significantly increased risk of future disease as a result of PFOA exposure.  No published opinion from a state or federal court applying West Virginia law has found such an injury sufficient to support a claim for battery.  Even if significantly increased risk of disease were theoretically sufficient to support a battery claim, Plaintiffs have failed to offer competent, admissible expert testimony as evidence of this alleged bodily harm.

In addition, no reasonable jury could find that DuPont demonstrated the requisite intent to support a battery claim.  "Intent" in the context of battery requires that the actor desires to cause the consequences of his or her act, or believes that the consequences are substantially certain to result from it.  *Gregory*, 413 S.E.2d at 82 (quoting Restatement (2d) of Torts § 8A).  Because the weight of scientific evidence does not establish a causal link to human disease at these trace levels of exposure, no reasonable jury could conclude that DuPont intended or was substantially

certain that its PFOA emissions would put Plaintiffs at a significantly increased risk of serious disease. *See id.* (citations omitted).

Similarly, Plaintiffs' concern that they may develop adverse health effects from PFOA exposure at some point in the future, standing alone, is not sufficient to support a battery claim. *See id.* (rejecting battery claim "based solely on a fear of contracting the AIDS virus"). These concerns must be objectively valid, which Plaintiffs cannot establish without competent expert testimony evidencing that PFOA at levels found in PUB drinking water is capable of causing the alleged serious adverse health effects — evidence that Plaintiffs do not have. *See* Restatement (2d) of Torts § 19 (2009) (contact cannot be offensive unless it is unreasonable). As a result, the Court should award summary judgment in DuPont's favor on the battery issue.

### 2. DuPont is Entitled to Summary Judgment on Plaintiffs' Trespass Claim.

DuPont is entitled to judgment as a matter of law as to Plaintiffs' trespass claim. West Virginia does not recognize a trespass claim based solely upon exposure to alleged environmental contamination. *See Bartlett v. Grasselli Chem. Co.*, 115 S.E. 451, 455 (W. Va. 1922). This is so because emissions of the type at issue in this action, without more, do not constitute damage sufficient to support a trespass claim. Under West Virginia law, liability for trespass requires that a plaintiff show "an entry on another man's ground without lawful authority, and doing some damage, however inconsiderable, to his real property." *Hark*, 34 S.E. 2d at 352; *Young v. Appalachian Power Co.*, 2008 WL 4571819, at *4 (S.D. W. Va. Oct. 10, 2008) (quoting *Hark*). Plaintiffs have failed to raise a genuine issue of material fact as to either the entry or the damage element of their trespass claim.

Plaintiffs cannot show that the PFOA in their tap water is an entry that is "without lawful authority." The level of PFOA in Plaintiffs' tap water has never exceeded any applicable regulatory limit for human drinking water; indeed, one Plaintiff's tap measured non-detect for

PFOA.  The presence of PFOA in Plaintiffs' taps is no more unlawful than the presence of the water itself.[12]  Nor can Plaintiffs prove that they have suffered any damage as a result of the trace amounts of PFOA in their tap water.  Plaintiffs assert that the presence of PFOA in their bodies and on their property has caused them some kind of nebulous harm, but have failed to articulate what that damage might be.  They have abandoned their claims for personal and bodily injury, and do not claim to suffer from any particular illness caused by PFOA exposure.  Ex. 10 at Interrog. 13.  They have also abandoned their claims for diminished property value and stigma. *Id.* Interrog. 14.  In short, Plaintiffs have admitted that there is no evidence that PFOA in their tap water has caused "some damage" — even "inconsiderable."

In an effort to avoid absurd results in cases involving alleged environmental contamination, numerous states have rejected the rule that invasion on a particulate level can engender liability, even for nominal damages for trespass.  Where particulate matter is involved, such cases require that the plaintiff demonstrate, in addition to the traditional elements of trespass, "substantial damages" to his or her property.  *See, e.g.*, *Williams*, 659 N.E.2d at 382-83. Proof of only a trivial or *de minimis* encroachment fails to satisfy the damage requirement.  *See Carroll v. Litton Sys., Inc.*, 1990 WL 312969, at *57, 90 (W.D.N.C. Oct. 29, 1990).  "[T]he plaintiff who cannot show that actual and substantial damages have been suffered should be subject to dismissal of his cause upon a motion for summary judgment."  *Bradley v. American Smelting and Refining Co.*, 104 Wash. 2d 677, 692,709 P.2d 782, 791 (1985).

Because Plaintiffs cannot show actual, let alone "substantial," damage, they are not entitled even to nominal damages, to say nothing of compensatory or punitive damages.  *See*

---

[12] This action is thus distinct from environmental contamination cases where the substance at issue was indisputably hazardous or otherwise exceeded permitted limitations.  *See, e.g.*, *Taylor v. Culloden Pub. Serv. Dist.*, 591 S.E.2d 197, 200 (W. Va. 2003) (untreated sewage exceeded national discharge limits); *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 488 S.E.2d 901, 905 (W. Va. 1997) (arsenic and chromium waste exceeded DEP limits).

*Concerned Loved Ones v. Pence*, 383 S.E.2d 831, 836, 838 (W. Va. 1989) (compensatory damages can be awarded in an action for trespass only "if actual damage is shown").  The Court should award summary judgment in DuPont's favor as to Plaintiffs' trespass claim.

      **F.**    **Plaintiffs' Claim for Punitive Damages Is Fatally Flawed.**

Plaintiffs' claim for punitive damages must be dismissed as a matter of law because West Virginia does not recognize a separate cause of action for punitive damages.  *See Roney v. Gencorp*, 431 F. Supp. 2d 622, 638 (S.D. W. Va. 2006) (dismissing separate claim for punitive damages).  Nor would Plaintiffs be entitled to punitive damages as a form of relief.  Punitive damages may only be awarded upon proof of (1) an underlying tortious act that is (2) committed with "gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others, or where legislative enactment authorizes it."  *Alkire v. First Nat'l Bank of Parsons*, 475 S.E.2d 122, 129 (W. Va. 1996); *Michael v. Sabado*, 453 S.E.2d 419, 435 (W. Va. 1994).  Punitive damages cannot be imposed because such damages are in the nature of a penalty, and a defendant may not, consistent with due process, "be penalized without reasonable warning of the consequences of his acts."  *Garnes v. Fleming Landfill, Inc.*, 413 S.E.2d 897, 909 (W. Va. 1992).

No reasonable jury could find that DuPont should have been forewarned that it would be subject to punitive damages for emissions that violated no applicable government regulations and for which there was no state-of-the-art knowledge of any risk, let alone significantly increased risk, of adverse human health effects based upon exposures commensurate with the levels of PFOA present in PUB water.  Moreover, punitive damages cannot, as a matter of law, be awarded in connection with most of Plaintiffs' claims.

### 1. DuPont Has Complied With Applicable Government Regulations Related to PFOA Emissions.

A defendant's compliance with applicable regulations renders the imposition of punitive damages improper, because it "overwhelm[s] any suggestion that [the defendant] acted with [a] conscious disregard for safety" necessary to show recklessness that is tantamount to criminal indifference. *In re Miamisburg Train Derailment Litig.*, 591, 725 N.E.2d 738, 752 (Ohio Ct. App. 1999). *See also Colombini v. Westchester County Healthcare Corp.*, 808 N.Y.S.2d 705, 709 (N.Y. App. Div. 2005).

All DuPont operations that generate PFOA emissions were permitted or otherwise allowed by federal and state regulations.  In addition, Plaintiffs cannot dispute that PFOA has never approached the 0.4 ppb PHA established by USEPA; the highest level of PFOA detected in PUB finished water was approximately 0.079 ppb — almost a full order of magnitude lower. *E.g.*, Dkt. No. 267, at ¶ 42.  Similarly, none of the Plaintiffs has a level of PFOA in his or her tap water that comes close to 0.4 ppb.  *See* Ex. 7.  Furthermore, even if DuPont failed to comply with any applicable regulation, the record here cannot support the requisite finding of malice, wantonness, or recklessness to support punitive damages.  *See Surber v. Greyhound Lines, Inc.*, 2006 WL 3761372, at *4 (S.D. W. Va. Dec. 21, 2006).  Punitive damages are not warranted if a defendant's conduct demonstrates "some concern for the safety of others" that shows a lack of the requisite malice or criminal indifference. *Philip Morris, Inc. v. Emerson*, 368 S.E.2d 268, 283-84 (Va. 1988) (defendants' provision of information on hazards and efforts to neutralize chemicals precluded finding of willful and wanton negligence as a matter of law).

DuPont's extensive voluntary efforts to monitor and reduce PFOA emissions from Washington Works, when considered against the existing regulatory back-drop and body of

available scientific literature, demonstrates concern for the safety of the community and precludes an award of punitive damages as a matter of law.

### 2. DuPont's Conduct Conformed to State-Of-The-Art Knowledge.

Relatedly, a defendant's compliance with state-of-the-art knowledge precludes a finding of bad faith or aggravating circumstances that would warrant the imposition of punitive damages. *See Owens-Corning Fiberglas Corp. v. Garrett*, 682 A.2d 1143, 1166-67 (Md. 1996).   To date, notwithstanding extensive study of PFOA, no published, peer-reviewed study has concluded that PFOA causes serious latent disease.  Based upon this state of scientific knowledge, no reasonable jury could conclude that DuPont demonstrated the maliciousness, wantonness, or recklessness required to support a punitive damage award.  *See Garnes*, 413 S.E.2d at 909.

### 3. Punitive Damages Cannot Be Awarded in Connection With Most of Plaintiffs' Claims.

Plaintiffs' Second Amended Complaint requests punitive damages only in connection with their gross negligence claim.  Dkt. No. 267 at ¶ 99.  This limitation is appropriate, because Plaintiffs' other claims, with the possible exception of battery, cannot provide a basis for punitive damages.  Punitive damages cannot be awarded for Plaintiffs' claims of simple negligence.  *See Surber*, 2006 WL 3761372, at *4; *Bennett v. 3 C Coal Co.*, 379 S.E.2d 388, 394 (W. Va. 1989).  Since punitive damages are legal, not equitable, relief, they cannot be awarded by a court of equity.  *See Tull v. United States*, 481 U.S. 412, 422 and n.7 (1987); *Given v. United Fuel Gas Co.*, 99 S.E. 476, 478 (W.Va. 1919) (same).  Punitive damages thus cannot be awarded in conjunction with the remedy of medical monitoring, already characterized as equitable by this Court.  *See Coca-Cola Co. v. Dixi-Cola Labs.*, 155 F.2d 59, 64 (4th Cir. 1946) (one who appeals to equity for relief waives punitive damages).  *See also* Mem. Op. and Order at

8-9 and n.5 (June 11, 2008) [Dkt. No. 220]; *Rhodes v. E. I. du Pont de Nemours and Co.*, 253 F.R.D. 365, 371 and n.5 (S.D. W. Va. 2008).

Punitive damages are similarly unavailable in regard to Plaintiffs' nuisance claims, for which they seek the equitable remedy of abatement. *See id.* at 369 (Plaintiffs seek "appropriate equitable and injunctive relief, 'including . . . medical monitoring . . . and to abate and/or prevent the release and/or threatened release of PFOA or C-8'"); *Burch v. Nedpower Mount Storm, LLC*, 647 S.E.2d 879, 894 (W. Va. 2007); Compl. at 22-23. To the extent that Plaintiffs' trespass claim apparently seeks only nominal damages, it cannot support a punitive award, because "a finding of compensatory damages . . . is an indispensable predicate to a finding of exemplary or punitive damages." *LaPlaca v. Odeh*, 428 S.E.2d 322, 323-24 (W. Va. 1993); *Garnes*, 413 S.E.2d at 908. *Accord Proctor v. 7-Eleven, Inc.*, 180 Fed. Appx. 453, 459 (4th Cir. 2006).

## IV.     CONCLUSION

For the foregoing reasons, DuPont's Motion for Summary Judgment should be granted.

Dated: June 12, 2009                    Respectfully submitted,

E. I. DU PONT DE NEMOURS AND COMPANY
By:  SPILMAN THOMAS & BATTLE, PLLC

 /s/     Niall A. Paul
Niall A. Paul (WV Bar No. 5622)
Nathan B. Atkinson (WV Bar No. 10757)
300 Kanawha Boulevard, East
P.O. Box 273
Charleston, WV 25321-0273
Tel: 304.340.3800
Fax: 304.340.3801

Jennifer Quinn-Barabanov *(admitted pro hac vice)*
Libretta P. Stennes *(admitted pro hac vice)*
Anthony F. Cavanaugh *(admitted pro hac vice)*
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Tel: 202.429.3000

**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
PARKERSBURG DIVISION**

**WILLIAM R. RHODES,
RUSSELL H. MILLER, AND
VALORI A. MACE,**

        **Plaintiffs,**

**v.**                              **CIVIL ACTION NO. 6:06-0530**

**E. I. DU PONT DE NEMOURS AND COMPANY,**

        **Defendant.**

## CERTIFICATE OF SERVICE

I, Niall A. Paul, do hereby certify that on June 12, 2009, I electronically filed the foregoing "**Memorandum in Support of Defendant's Motion for Summary Judgment**" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Harry G. Deitzler                    Robert A. Bilott
R. Edison Hill                          Gerald R. Rapien
Hill, Peterson, Carper, Bee and Deitzler, PLLC    Taft, Stettinius & Hollister, LLP
NorthGate Business Park              1800 First Tower
500 Tracy Way                        425 Walnut Street
Charleston, WV 25311-1261           Cincinnati, OH 45202-3957

Larry A. Winter                    J. Steven Justice
Winter Johnson & Hill PLLC           Taft, Stettinius & Hollister, LLP
P.O. Box 2187                        110 North Main Street
Charleston, WV 25328               Suite 900
                                  Dayton, OH 45402-1786

                       /s/ Niall A. Paul
                       Niall A. Paul (WV State Bar No. 5622)