IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT PARKERSBURG

WILLIAM R. RHODES,
RUSSELL H. MILLER, and
VALORI A. MACE,
            Plaintiffs,

v.                                          CIVIL ACTION NO. 6:06-0530
                                            (Chief Judge Joseph Robert Goodwin)


E. I. DU PONT DE NEMOURS
AND COMPANY,
            Defendant.

## REPLY IN SUPPORT OF DUPONT'S MOTION FOR SUMMARY JUDGMENT

### I.        INTRODUCTION

None of the arguments set forth in Plaintiffs' Opposition in any way undermine DuPont's

entitlement to summary judgment as a matter of law on all counts.

Plaintiffs' Opposition demonstrates that Plaintiffs have failed to allege a legally

cognizable injury that could support their common law claims.[1]  Plaintiffs have repeatedly

admitted that "they are *not* claiming that they are currently suffering from any particular manifest

illness or disease as a result of their PFOA exposure."  Opp. at 9.[2]  In their Opposition, Plaintiffs

further clarified that they "do not rest their private and public nuisance, trespass, battery,

negligence, and gross negligence claims on allegations of increased risk of disease."  Opp. at 10.

In other words, their common law claims are based upon neither current disease nor the alleged

risk of future disease.  These admissions, standing alone, provide a sufficient ground for entering

summary judgment in DuPont's favor.

---

[1] "Common law claims" refers to all of Plaintiffs' claims other than medical monitoring.
[2] This admission is consistent with the absence of any expert testimony attributing any of Plaintiffs' alleged existing medical conditions to PFOA exposure.

Plaintiffs, however, insist that their common law claims can be based upon PFOA "contamination" that consists of nothing more than the presence of PFOA in their blood and the PUB water that flows into their taps, without proving that the "contamination" causes any manifest illness, physical harm, or even increased risk of disease.  This "contamination" is not an injury properly recognized as a form of hurt, damage, or loss sustained.  Similarly, to allow Plaintiffs to pursue property damage claims for alleged modifications of their drinking water habits, based upon alleged fear and absent proof of increased risk, would improperly permit liability for Plaintiffs' individual choices, without requiring proof of any injury attributable to DuPont.

The Court should reject Plaintiffs' "contamination" theory of liability as an improper shortcut that seeks to impose liability for the mere presence of PFOA, without the need to prove that it has any significance.[3]  If accepted, this theory would turn the presence of even a single molecule of an allegedly toxic substance into the basis for a lawsuit.  Plaintiffs counter that their common law claims are not based upon the presence of a single molecule, but do not offer any rationale for avoiding this inevitable slippery slope.  Opp. at 9 n.15.[4]

Plaintiffs' improper shortcuts impact not only their common law claims, but their claim for medical monitoring as well, particularly on the issue of causation.  The evidence of PFOA emissions from Washington Works and the presence of PFOA in some nearby communities cited by Plaintiffs falls far short of meeting their burden of proving that the PFOA specifically

---

[3] As further evidence of this strategy, Plaintiffs' Opposition seeks to lay the groundwork for Plaintiffs to pursue their common law claims even if their experts' testimony is ultimately excluded.  In fact, exclusion of Plaintiffs' experts should properly result in summary judgment in DuPont's favor based upon the lack of admissible proof of causation.
[4] Moreover, Plaintiffs' "single molecule" theory of injury raises the question of whether the molecule at issue came from Washington Works, since there are undeniably other sources of PFOA in the environment.  *Cf. Adams v. Cooper Indus. Inc.*, 2007 U.S. Dist. LEXIS 55131, at *36 (E.D. Ky. 2007) ("The plaintiffs' argument proves too much. . . . [I] f 'any' exposure is sufficient to cause the plaintiffs' illnesses, then differential etiology would not work to rule out other sources of exposure to the same substance.").

detected in PUB water came from DuPont's Washington Works plant.[5]  Similarly, Plaintiffs

themselves acknowledge that their experts have skipped critical steps in their causation analysis:

"While Plaintiffs' experts have not provided a specific dose at which PFOA generally causes

human disease, Plaintiffs' experts have opined on the specific increased risks that these Plaintiffs

now face based upon their specific exposures to PFOA."  Opp. at 6.  This "analysis" is illogical

on its face.  Plaintiffs' experts cannot properly offer specific causation opinions about the alleged

increased risk for the individual Plaintiffs without first identifying a threshold level of exposure

that causes an increased risk of disease in general (general causation).

In addition, Plaintiffs have failed to refute DuPont's arguments which demonstrate that

each of their common law claims suffers from specific fatal defects.  For example, Plaintiffs lack

standing to pursue a public nuisance claim because they have not suffered a special injury, and

their fear of "contamination" is not a substantial and unreasonable interference that might

support a private or a public nuisance claim.  Plaintiffs do not dispute that battery requires both

intent and an offensive contact, but cannot show that offensive contact in fact resulted, or

DuPont's intent to cause offensive contact.  Similarly, Plaintiffs acknowledge that trespass

requires a showing of an unlawful entry coupled with resulting damage, but cannot show either

that the presence of trace amounts of PFOA on Plaintiffs' properties and in their bodies is an

unlawful entry, or that they have suffered any legally cognizable damage from the PFOA's

presence.  Finally, Plaintiffs essentially concede that punitive damages are not available for any

of their claims other than gross negligence, and fail to create a genuine issue of fact that DuPont

acted with the malice or recklessness necessary to impose punitive damages.

---

[5] There is no dispute that PFOA was not detected in PUB water until 2001 and that DuPont disclosed this fact.

## II.   ARGUMENT

**A.   Plaintiffs Concede That They Have Not Suffered Any Injury That Could Support A Nuisance Claim.**

The alleged "contamination" of Plaintiffs' persons and property with trace levels of PFOA cannot support their nuisance claims, either public or private, as a matter of law.

Plaintiffs lack standing to pursue a public nuisance claim, whether in an individual capacity or as representatives of a class.[6]   Private parties must suffer special injury in order to have standing to assert a public nuisance claim – whether that claim relates to environmental contamination or any other subject matter.   Plaintiffs do not point to any legal authority that holds otherwise.[7]

Plaintiffs implicitly concede that they have failed to generate an issue of fact that they have suffered special injury.   In addition to "the general public injury – contamination of PWD water," Plaintiffs claim to "have suffered special injury through PFOA contamination of their properties and bodies, which required them to modify their use of drinking water and face an *increased risk of disease.*"   Opp. at 11 (emphasis added).   This argument flatly contradicts Plaintiffs' representation, made only a page earlier, that their common law claims, including public nuisance, "do not rest . . . on allegations of increased risk of disease."   Opp. at 10; *see also id.* at 11 ("increased risk is not an element of a public or private nuisance claim").   Moreover, the alleged public and special injuries are indistinguishable.   Plaintiffs contend that their bodies and

---

[6] As DuPont will demonstrate in its forthcoming opposition to Plaintiffs' motion to certify their public nuisance claim, no West Virginia court has adopted or otherwise approved of Restatement (Second) of Torts § 821C(2). Even if that section of the Restatement were applicable, it would not grant Plaintiffs standing to pursue a public nuisance claim on behalf of a class.

[7] *Taylor v. Culloden* held only that the Act "clearly left intact all existing common law actions for public nuisance." 591 S.E.2d 197, 206 (W. Va. 2003). *Taylor* does not, however, relax or otherwise alter the common law requirements for a public nuisance claim, including the requirement of a special injury. Similarly, *Int'l Shoe Co. v. Heatwole*, 30 S.E.2d 537, 540 (W. Va. 1944) only serves to emphasize the proposition that a "private individual can maintain an action for relief against a public nuisance only when he has suffered an injury different from that inflicted upon the public in general, not only in degree, but in character."

property have been "contaminated" by PUB water containing PFOA.  Since Plaintiffs do not

allege that this contamination has caused "personal injury" or "physical harm" to property, the

Restatement section cited by Plaintiffs does not support the conclusion that this "contamination"

qualifies as special injury.  *See id.* at 11-12 (citing Restatement (2d) of Torts §821C, cmt. D).

Plaintiffs offer no evidence whatsoever that this alleged special injury of "contamination" is

different in kind or degree from that experienced by any other PUB customer.  Since Plaintiffs

have failed to create *any* issue of fact that they have experienced special injury, DuPont is

entitled to summary judgment on the public nuisance claim.

Further, Plaintiffs' fear of "contamination" from the trace levels of PFOA in PUB water

does not give rise to liability for nuisance, whether private or public.  The West Virginia

Supreme Court has squarely held that fear of chemical contamination does not constitute a

"substantial," "reasonable," or "significant" interference, and thus cannot support recovery on a

nuisance theory.  *Carter v. Monsanto*, 575 S.E.2d 342, 347 (W. Va. 2002).  Since fear of

contamination is not "a substantial and unreasonable interference," any changes in Plaintiffs'

drinking water habits allegedly motivated by their fear similarly cannot support their nuisance

claims.  Plaintiffs' testimony that they have been subjected to an unreasonable interference does

not create a question of fact for the jury.  If such testimony were sufficient, it would preclude

summary judgment in every case, with the result that any subjectively undesirable "interference"

with a plaintiff's life, however *de minimis* or objectively unreasonable, could potentially trigger

liability for nuisance – a result clearly at odds with West Virginia law.  *See id.*

**B.**     **Plaintiffs Fail to Identify Adequate Factual or Legal Support for Battery.**

Plaintiffs concede that the West Virginia Supreme Court has not recognized a claim for

chemical battery.  That concession is sufficient to resolve Plaintiffs' claim in DuPont's favor.

Rather than identify affirmative support for their claim under West Virginia law, Plaintiffs devote much of their Opposition to unsuccessful efforts to distinguish cases relied upon by DuPont and to excerpt incomplete and misleading quotations from the Restatement and related commentary. Plaintiffs' arguments fail to establish that the alleged "contamination" of Plaintiffs' blood with PFOA is a harmful or offensive contact sufficient to support a battery claim. *See Funeral Servs. by Gregory, Inc. v. Bluefield Community Hosp.*, 413 S.E.2d 79, 82 (W. Va. 1991). As a result, summary judgment should be entered for DuPont.

Plaintiffs' effort to assert a battery claim based upon the mere presence of PFOA, without any evidence that this presence is harmful, fails as a matter of West Virginia law. Bodily harm is defined as "any physical impairment of the condition of another's body, or physical pain or illness." *Id.* at n.6 (citing Restatement (2d) Torts § 15). The situation described in the illustration to § 15 comment a, relied upon by Plaintiffs, is readily distinguishable.[8] Since Plaintiffs are not claiming that PFOA causes an increased risk of disease or a manifest injury in connection with their battery claim, they have not provided any evidence that the mere presence of PFOA in their bodies can properly be characterized as a "physical impairment."[9] In fact, comment b to Section 15, ignored by Plaintiffs, makes clear that certain discernible effects on a person – such as "disturbance[s] of the nerve centers caused by fear" – can be so "minute" that they do not rise to the level of bodily harm. Thus, Plaintiffs have suffered no bodily harm by virtue of their exposure to trace amounts of PFOA that could support a battery claim.

---

[8] The unauthorized removal of a wart, even if beneficial to the patient, not only impairs, but destroys that tissue.
[9] Contrary to Plaintiffs' contention, *McClenathan*, which rejected the concept of a chemical battery where plaintiffs inhaled allegedly toxic chemicals, applies because, by their own admission, Plaintiffs here have also failed to claim any personal or physical injury caused by PFOA exposure. Opp. at 9 and 15; *McClenathan v. Rhone-Poulenc*, 926 F. Supp. 1272, 1276 n.5 (S.D. W. Va. 1996). Similarly, in *Gregory*, the West Virginia Supreme Court rejected a battery claim where there was no physical impact and the claim was based upon the fear of contracting disease in the future. *See* 413 S.E.2d at 82.

Plaintiffs' alternative argument that battery can be based upon the alleged offensiveness of their contact with PFOA in PUB water is similarly flawed.  The plain language of and comment to Restatement § 19 demonstrate that Plaintiffs' PFOA exposure is not an "offensive contact," specifying that only those bodily contacts that intrude upon a "reasonable" sense of personal dignity are offensive within the meaning of the Restatement.  Comment a to § 19. Thus, contact that would not offend an ordinary person, but only one who is "unduly sensitive as to his personal dignity," does not suffice.[10]  This reasonableness limitation on offensiveness is consistent with West Virginia law.[11]  Plaintiffs have represented that they will not base their battery claim on any manifest personal injury or increased risk of future disease.  Opp. at 9. Plaintiffs' testimony that each is subjectively offended at the presence of PFOA in his or her body is insufficient to permit a jury to find that contact with PFOA in PUB water is, by itself, sufficiently offensive to a reasonable person to constitute battery.[12]

## C.       Plaintiffs Have Not Raised a Genuine Issue that PFOA in PUB Water Results in Trespass.

As Plaintiffs acknowledge, liability for trespass arises under West Virginia law only when a plaintiff can show "an entry on another man's ground without lawful authority, and doing some damage, however inconsiderable, to his real property."  *Hark v. Mountain Fork Lumber Co.*, 34 S.E.2d 348, 352 (W. Va. 1945) (internal quotation marks omitted); Opp. at 15.  The sole issue here centers upon whether the presence of trace amounts of PFOA in PUB water constitutes an entry on Plaintiffs' respective properties "without lawful authority," and causes legally relevant "damage."

---

[10] Plaintiffs' only authority for their interpretation of the meaning of "offense to personal dignity" involved claims of battery and sexual harassment. *See Johnson v. Ramsey County*, 424 N.W.2d 800 (Minn. App. 1988).

[11] *Gregory* rejected a battery claim lacking competent evidence of risk of harm from exposure; the plaintiffs' subjective, unvalidated "fear of contracting the AIDS virus" did not support a battery claim.  413 S.E.2d at 82.

[12] Restatement § 18 comment c, which Plaintiffs cite, has nothing to do with the question of whether trace amounts of material in a plaintiff's body are offensive.

Plaintiffs resort to a gross misrepresentation of the law of West Virginia and other jurisdictions to support their claim that a trespass occurred against their properties and their persons.[13] West Virginia does not recognize a trespass claim premised solely on exposure to alleged environmental contamination, as Plaintiffs' own authority demonstrates. *See*, *e.g.*, *Koch v. Eastern Gas & Fuel Assocs.*, 95 S.E.2d 822, 832 ("a case like this [involving the emission of 'noxious gases'] . . . involves no actual trespass by defendants on plaintiffs' property"). Each of Plaintiffs' cases serves only to show that both an unlawful entry and actual, substantial damage are necessary for trespass.[14] Plaintiffs, here, have abandoned their claims for personal and bodily injury and for diminished property value and stigma, and do not claim to suffer from any illness caused by the presence of PFOA in their bodies. Plaintiffs' conception of trespass creates a slippery slope with a fundamentally untenable result: they would have the Court accept that the presence of trace particles of a substance well within applicable regulatory limits and causing no impact is substantively indistinguishable from the dumping of untreated sewage with an actual impact. *See Taylor v. Culloden*, 591 S.E.2d 197, 200 (W. Va. 2003) (involving the "continuous dumping of untreated sewage" in violation of a variety of sewage effluent regulations).

**D.     Punitive Damages Are Not Available For Any Of Plaintiffs' Claims.**

Plaintiffs do not dispute that punitive damages are unavailable for a claim of simple negligence. They do not refute DuPont's argument that punitive damages cannot be awarded in connection with their medical monitoring or abatement claims, and do not identify any authority

---

[13] That Plaintiffs will resort to any theory to support their claims is nowhere more evident than in their reliance on cases that have nothing to do with trespass, but rather concern issues of conversion or strict liability in regard to the donation and transfusion of bodily tissue and fluids. Opp. at 17 n.24 (arguing that blood is the "property" against which a trespass has occurred).

[14] *See Atkinson v. Virginia Oil & Gas*, 79 S.E. 647, 648 (W. Va. 1913) (percolating water destroyed the flow of gas into plaintiff's well, thus rendering the well worthless for production); *Smith v. Carbide & Chems. Corp.*, 507 F.3d 372, 377, 378 (6th Cir. 2007) (plaintiffs claimed diminution in property values due to radiation exposure, and other financial harm, including denial of mortgages); *U.S. Steel Mine Co., Inc. v. Mitros*, 54 F.3d 775, 1995 WL 311563, at **1, 3 (4th Cir. 1995) (involving the actual, physical entry of persons onto the plaintiffs' land).

to support such an award.  Although Plaintiffs now claim that they seek damages – including

nominal damages – in addition to abatement, they provide no information on what those

damages might be.  Furthermore, Plaintiffs' argument that punitive damages can be imposed

even where only nominal damages are awarded relies upon a fundamental misunderstanding of

the meaning of nominal damages,[15] and flies in the face of *Garnes v. Fleming Landfill, Inc.*, 413

S.E.2d 897 (W. Va. 1991) (punitive damages are only appropriate where there has been a finding

of compensatory damages).  *See also LaPlaca v. Odeh*, 428 S.E.2d 322, 323-24 (W. Va. 1993).

Most important, Plaintiffs do not dispute that, under West Virginia law, an award of

punitive damages is impermissible unless the plaintiff has shown an underlying tortious act that

is committed with "gross fraud, malice, oppression, or wanton, willful, or reckless conduct or

criminal indifference to civil obligations."  *Alkire v. First Nat'l Bank of Parsons*, 475 S.E.2d

122, 129 (W. Va. 1996).  Plaintiffs cannot possibly claim that the presence in their tap water or

their bodies of even one molecule of a substance with no causal link to human health effects

constitutes malice or recklessness.  Instead, their Opposition recasts their claims as assertions of

some form of gross fraud.  Opp. at 19 (alleging that "DuPont failed to inform the public of the

risk" of PFOA in drinking water).  There has been no fraud as a matter of law in this action[16] —

---

[15]  By definition, nominal damages are not meant to compensate a plaintiff for actual harm suffered, and by their nature indicate that the plaintiff's injury was purely technical.  *See* Black's Law Dictionary 418 (8th ed. 2004) (nominal damages are a "trifling sum awarded when a legal injury is suffered but when there is no substantial loss or injury to be compensated").  *Rohrbaugh v. Wal-Mart Stores, Inc.*, 572 S.E.2d 881 (W. Va. 2002) does not hold otherwise.  In fact, *Rohrbaugh* affirms that "*Garnes* prohibits an award of punitive damages when there has not been an award of compensatory damages."  *Id.* at 886.  Plaintiffs cite *Rohrbaugh* in support of their argument by seizing on the Court's imprecise use of language in a footnote.  *Id.* at 888 n.19.  Read in context, however, the Court's reference to "nominal compensatory damages" clearly employs the adjective "nominal" in its usual sense, as describing an actual award of compensatory damages that happens to be small in amount – and not in its legal sense. Moreover, the law of Alabama, as set forth in the case in *Rohrbaugh*'s footnote 19, is diametrically at odds with West Virginia's law on punitive damages.  *Compare Garnes*, 413 S.E.2d at 909 (punitive damages should bear reasonable relationship to compensatory damages), *with Surrency v. Harbison*, 489 So. 2d 1097, 1105 (Ala. 1986) (award of punitive damages need not bear any relationship to actual damages).

[16] As an initial matter, Plaintiffs have not alleged fraud in this action, let alone pleaded fraud with the particularity required by the Federal Rules.  *See* Fed. R. Civ. P. 9(b).  Whether Plaintiffs properly pleaded fraud is irrelevant,

to say nothing of "gross fraud."  Under West Virginia law, the essential elements of fraud include, *inter alia*, justifiable detrimental reliance by the plaintiff on a material falsehood by the defendant.  *See*, *e.g.*, *Terra Firma Co. v. Morgan*, 674 S.E.2d 190, Syl. Pt. 5 (W. Va. 2008); *Schultz v. Consolidation Coal Co.*, 475 S.E.2d 467, Syl. Pt. 2 (W. Va. 1996).  There can be no fraud here because PFOA was not detected in PUB water until 2001, and DuPont has never hidden this fact.  Furthermore, Plaintiffs neither claim nor can show that they justifiably relied to their detriment on anything DuPont did or did not say or do with regard to PFOA in PUB water. In short, DuPont's actions do not rise to the level of gross fraud, malice or recklessness, and punitive damages are therefore improper as a matter of law.

### III.    CONCLUSION

For the reasons set forth above and in DuPont's opening Motion and supporting brief, DuPont's Motion for Summary Judgment should be granted.

**Respectfully submitted,**

**E. I. DU PONT DE NEMOURS AND COMPANY**
**By:  SPILMAN THOMAS & BATTLE, PLLC**


  /s/ Niall A. Paul
Niall A. Paul (WV Bar No. 5622)         Jennifer Quinn-Barabanov (admitted *pro hac vice*)
300 Kanawha Boulevard, East              Libretta P. Stennes (admitted *pro hac vice*)
P.O. Box 273                             Steptoe & Johnson LLP
Charleston, WV 25321-0273                1330 Connecticut Ave, NW
Tel: 304.340.3800                        Washington, DC 20036
Dated: July 7, 2009                      Tel: 202.429.3000

---

however, because they could not show as a matter of law that anything DuPont has allegedly said or done or failed to say or do regarding the presence of PFOA in PUB water warrants the imposition of punitive damages.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT PARKERSBURG

WILLIAM R. RHODES,
RUSSELL H. MILLER, and
VALORI A. MACE,
      Plaintiffs,

v.                        CIVIL ACTION NO. 6:06-0530
                                  (Chief Judge Joseph Robert Goodwin)


E. I. DU PONT DE NEMOURS
AND COMPANY,
      Defendant.

## CERTIFICATE OF SERVICE

I, Niall A. Paul, do hereby certify that on July 7, 2009, I electronically filed the foregoing

"**REPLY IN SUPPORT OF DUPONT'S MOTION FOR SUMMARY JUDGMENT**" with

the Clerk of the Court using the CM/ECF system, which will send notification of such filing to

the following:

Harry G. Deitzler  
R. Edison Hill  
Hill, Peterson, Carper, Bee and Deitzler, PLLC  
NorthGate  Business Park  
500 Tracy Way  
Charleston, WV  25311-1261

Robert A. Bilott  
Gerald R. Rapien  
Taft, Stettinius & Hollister, LLP  
1800 First Tower  
425 Walnut Street  
Cincinnati, OH 45202-3957

Larry A. Winter  
Winter Johnson & Hill PLLC  
P.O. Box 2187  
Charleston, WV  25328

J. Steven Justice  
Taft, Stettinius & Hollister, LLP  
110 North Main Street  
Suite 900  
Dayton, OH  45402-1786

/s/ Niall A. Paul
Niall A. Paul (WV State Bar No. 5622)